W.E. LONG CO. — Independent Bakers' Cooperative *v.* HOLSUM BAKING CO.

91-125                                              820 S.W.2d 440

Supreme Court of Arkansas
Opinion delivered November 25, 1991

346

*Ramsay, Bridgforth, Harrelson and Starling*, by: *Phillip A. Raley* and *William S. Roach*, for appellant.

*Rose Law Firm, A Professional Association*, by: *Hillary Rodham Clinton* and *James H. Druff*, for appellee.

Tom Glaze, Justice. This case involves a dispute between W. E. Long Co. (Long) and Holsum Baking Co. (Holsum Baking) over the use of the "Holsum" trademark in the marketing of bakery products.[1] The major events leading to the dispute are relevant to a discussion of the issues raised on appeal.

Long first registered the "Holsum" mark on such products in Arkansas in 1929. Long licensed Shipley Baking Co. (Shipley), permitting it to use the "Holsum" mark. Years later, in 1944, Long entered into an agreement granting Holsum Baking a bread formula and the right to use the "Holsum" tradename for advertising purposes in Pine Bluff and in other areas not expressly reserved to other Long customers. In fact, Holsum Baking's geographical market reached outside Pine Bluff and bordered Shipley's territory.[2] Under the 1944 agreement, Holsum Baking was able to purchase $3,000 or more advertising supplies from Long during the calendar years of 1944, 1945 and 1946. In 1946,

---

[1] Holsum Baking was previously known as Arkansas Baking Company.

[2] Shipley's and Holsum Bakery's marketing areas actually overlap in Conway, Arkansas.

Holsum Baking joined Quality Bakers of America (QBA), a cooperative and a Long competitor. Since then, Holsum Baking has continuously displayed both QBA's Sunbeam trademark and the Holsum mark on its packaging. More specifically, Holsum Baking's vice-president, David Jenkins, explained that his company sold its bread during this period under the composite mark of Holsum Sunbeam.

In 1986, however, Holsum Baking added a wheat bread product and marketed it as "Holsum Grains" with no mention of the Sunbeam mark. In this same year, Long's representatives visited Holsum Baking and tried unsuccessfully to persuade Holsum Baking to join the Long cooperative. During this visit and discussions with Holsum Baking officials, the Long representatives inspected the bread selection of the two stores where the "Holsum Grains" bread was on display. Holsum Baking subsequently rejected a proposed membership agreement tendered to it by Long.

In February of 1990, Long claimed it had just learned of Holsum Baking's sales of "Holsum Grains" bread and its purchasing of packaging bearing the "Holsum" mark. Long wrote Holsum Baking requesting that it cease any further use of the mark. Holsum Baking did not respond. Long opted to contact its packaging suppliers, Mobil Chemical Co. (Mobil), Princeton Packaging Co. (Princeton) and James River Paper Co. (James River), and advised them not to sell packaging bearing the "Holsum" mark to Holsum Baking because Holsum Baking was not licensed by Long. The three suppliers acceded to Long's request which triggered Holsum Baking's filing this lawsuit. Because of Long's action, Holsum Baking could obtain packaging with only the Sunbeam label.

In its complaint, Holsum Baking alleged that its 1944 agreement with Long had been breached or abandoned by the parties in 1946 and that Holsum Baking had acquired its rights to the "Holsum" mark in the territory it has continuously served over the past forty-four years. Holsum Baking further claimed a valid contractual relationship and business expectancy with its packaging suppliers, Mobile, Princeton and James River, and that Long had intentionally interfered with that relationship by cutting off its packaging and causing a loss in its bread sales. It

also alleged that Long was liable for tortious interference with prospective economic advantage, fraud and conversion and prayed that Long and the three suppliers be enjoined from any acts preventing Holsum Baking from obtaining packaging bearing the "Holsum" mark.

The trial court granted Holsum Baking a temporary restraining order and one month later, a preliminary injunction from which Long brings this appeal. Long argues the trial court erred in issuing injunctive relief because Holsum Baking failed to show that it would be irreparably harmed or that it would likely succeed on the merits of its tortious allegations.

In arguing Holsum Baking suffered no irreparable harm, Long claims the trial court was clearly wrong in finding Holsum Baking suffered any damages because Holsum Baking continued selling its bread products under the Sunbeam label at the same price as it did under the Holsum mark. Citing *Kreutzer* v. *Clark*, 271 Ark. 243, 607 S.W.2d 670 (1980), Long also argues that, even if Holsum Baking had suffered some damages, the harm could be recouped through money damages and therefore cannot be considered irreparable.

At trial, Holsum Baking did present evidence reflecting monetary loss in the weekly sum of $1,975 due to its inability to sell Holsum Grains bread. In order to market this bread, Holsum Baking had to introduce a Sunbeam Sandwich Wheat, which took several weeks. Other like testimony bearing on money damages was mentioned at trial, but Holsum Baking argues its irreparable harm results from Long's actions in preventing Holsum Baking's use of its common law trademark right in the "Holsum" mark — a right it acquired over the years since 1946.

Mr. David Allen, a trademark expert, testified that the 1944 agreement between Holsum Baking and Long was invalid, because Long had attempted to grant a license without controlling the quality of the goods sold under the "Holsum" mark. Also, Allen opined the parties' agreement was unenforceable because the agreement was unlawfully tied to Holsum Baking's purchase of advertising materials from Long. In sum, because the parties' agreement was invalid but Holsum Baking continued to use the "Holsum" mark when marketing its products in the territory it served, Allen concluded Holsum Baking established a valid

trademark in the "Holsum" label in its market area. Based upon its acquired rights in the "Holsum" mark, Holsum Baking analogizes its situation to the trademark infringement cases where a trademark represents intangible assets such as reputation and goodwill, and a showing of irreparable harm can be satisfied if it appears that the movant for a preliminary injunction can demonstrate a likelihood of consumer confusion. *General Mills, Inc.* v. *Kellogg Co.*, 824 F.2d 622 (8th Cir. 1987). Proof of actual confusion is not essential to demonstrate trademark infringement. *Id.* Further, the movant's burden at the preliminary injunction stage is slight. *International Kennel Club* v. *Mighty Star, Inc.*, 846 F.2d 1079 (7th Cir. 1988).

Long counters Holsum Baking's contention, stating the rules in trademark infringement actions are inapplicable because neither Long nor anyone else is advertising or making sales in Holsum Baking's marketing area under a trademark which infringes on any purported trademark rights of Holsum Baking. Stripped of such assertions, Long argues that Holsum Baking's lawsuit is reduced merely to tortious claims that could be satisfied by money damages. Long further argues that, in trademark infringement cases, the likelihood of consumer confusion that leads to the threat of irreparable injury results from the use of a similar mark by another in the same market area thereby damaging the trademark owner's goodwill and reputation. Here, Long asserts that no such confusion was shown nor was it found by the trial court.

When Long claimed knowledge of Holsum Baking's use of the "Holsum" mark, it could have sued Holsum Baking then, claiming it was infringing on Long's trademark. Instead, Long chose to cut off Holsum Baking's packaging supply, by asking Mobile, Princeton and James River not to furnish Holsum Baking any more packaging with the "Holsum" label. Thus, instead of joining issues and differences in a trademark infringement lawsuit, Holsum Baking was forced to obtain other type relief in order for it to avoid losing its asserted right to the "Holsum" mark which it had long used in its service area. If Holsum Baking acceded to Long's and its suppliers' actions, it stood to lose any right it possessed to the "Holsum" mark.

Placed in this position, Holsum Baking, unable to file an

infringement action, sought injunctive relief in order to reinstate its packaging source with its "Holsum" mark. Holsum Baking's acquired goodwill and reputation gained over the years through the use of the "Holsum" mark is no less significant or relevant merely because the mark's use is questioned in an action other than one involving trademark infringement.

■ Contrary to Long's contention, we also believe that, because it was forced to market its bakery products without the "Holsum" label, Holsum Baking showed consumer confusion would likely arise if it was not afforded relief. For instance, since Holsum Grains was removed from the market, the consumer cannot know if the Holsum Grains bread he or she once bought is the same bread as Holsum Baking now shelves as Sunbeam Sandwich Wheat. Also, if Shipley or another Long licensee moves into the Pine Bluff area and markets "Holsum" products, such an event will likely undermine and confuse the association between Holsum Baking's products and the "Holsum" trademark in the mind of the public. The trial court found that Holsum Baking's loss was not only monetary but also included the unredeemable loss of goodwill. From our de novo review, we believe the record supports the trial court's finding of irreparable harm. Thus, we are unable to say that the chancellor abused his discretion in granting a preliminary injunction. *Smith* v. *American Trucking Ass'n*, 300 Ark. 594, 781 S.W.2d 3 (1989).

■■ Long next argues that Holsum Baking failed to show that it would likely prevail on the merits of any of its tortious claims. Of course, in order to justify a grant of preliminary injunction relief, a plaintiff must establish that it will likely prevail on the merits at trial. *Smith* v. *Arkansas Trucking Ass'n*, 300 Ark. 594, 781 S.W.2d 3 (1989). Here, the trial court, in issuing its temporary restraining order and preliminary injunction, found that Holsum Baking will likely prevail in its efforts to establish both that Long and Shipley have impermissibly and fraudulently interfered with Holsum Baking's contractual relations with its suppliers. The court further found that Long and the other defendants had joined in combination to convert Holsum Baking's accumulated goodwill by disrupting Holsum Baking's business expectancy in its dealings with retail consumers.

■■ In alleging that Long committed tortious interfer-

ence with Holsum Baking's business relationships with its packaging suppliers, Holsum Baking had to show (1) the existence of a valid contractual relationship or a business expectancy, (2) knowledge of the relationship or expectancy on the part of the interferor, (3) intentional interference inducing or causing a breach of termination of the relationship or expectancy and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Mid-South Beverages, Inc.* v. *Forrest City Grocery Co.*, 300 Ark. 204, 778 S.W.2d 218 (1989). Clearly, Holsum Baking had a business expectancy with its suppliers, Mobil, Princeton and James River, since it had been doing business with them, especially Mobil, for years. Equally clear is the fact that Long interfered with the relationship between Holsum Baking and these suppliers when Long contacted the suppliers, instructing them to stop selling "Holsum" trademark packaging to Holsum Baking. As previously discussed, Holsum Baking sustained damages as a result of Long's interference. From our review at this stage of the proceedings, we believe the record supports the trial court's finding that Holsum Baking will likely prevail on the merits of this underlying tortious claim.

Long argues that it cannot be sued for tort of interference merely because it attempted to enforce its own contract with Mobile, Princeton and James River. In this regard, Long points to its agreement with these suppliers that reflects they will not sell trademark packaging which is confusingly similar to Long's trademark or is substantially similar to Long's packaging rights. Of course, Long's argument begs the very question and controversy that led to the filing of this lawsuit — whether Long has any claim to the "Holsum" mark in the territory served by Holsum Baking. Based upon the evidence presented below by Holsum Baking, Long has since abandoned such a right, and Holsum Baking has acquired it.

Although briefed, we need not discuss the remaining counts alleged and argued in Holsum Baking's lawsuit since what we have considered is sufficient to uphold the trial court's decision to issue a preliminary injunction. A final hearing in this matter is yet to be held. At this point, Long has offered no witnesses of its own. Additional evidence and argument are sure to follow this interlocutory appeal. Suffice it to say, the trial court's issuance of its temporary restraining order and preliminary injunctive relief is

amply supported by the law and the facts at this stage of the proceedings.

For the reasons stated above, we affirm.