Juliet B. BROWN and Larry Brown, Husband and Wife *v.* SEECO, INC. an Arkansas Corporation

93-890                                                      871 S.W.2d 580

Supreme Court of Arkansas
Opinion delivered March 14, 1994
[Rehearing denied April 18, 1994.]

*Sexton Law Firm, P.A.*, by: *Sam Sexton, Jr.*, for appellants.

*Everett, Mars & Stills*, by: *Thomas A. Mars*, for appellee.

ROBERT L. BROWN, Justice. This case involves an oil and gas lease entered into in 1961 between Julius and Mary Flegel, the parents of appellant Juliet Brown, and Arkansas Western Gas Company, the parent company of appellee SEECO, Inc. The lease covered the NE 1/4 SE 1/4 and SE 1/4 NE 1/4 of Section 2, Township 9 North, Range 26 West in Franklin County and was for a primary term of two years and "as long thereafter as oil liquid hydrocarbons, gas or their respective constituent products, or any of them is produced from said land."

Arkansas Western Gas drilled and completed a well in Section 2 in 1961 on lands owned by Elizabeth Post and designated the well as #1 Elizabeth Post (Post well). The Oil and Gas Commission designated all of Section 2 as a single drilling and production unit.

The leased property was subsequently conveyed to Juliet B. Brown, the daughter of the Flegels, who later conveyed an interest in the property to her husband, Larry Brown. Arkansas Western Gas then assigned its lease to appellee SEECO, its sister company. SEECO agreed to sell any gas it produced to Arkansas Western Gas.

In October of 1985, SEECO began attempts to purchase the mineral interests underlying the leased property from Juliet Brown. SEECO also made an offer to purchase the Browns' royalty interest. The Browns refused.

On December 18, 1990, the Browns sued SEECO to cancel the SEECO lease agreement for failure to produce natural gas in allowable or paying quantities, for failure to commence further development, and for underpaying royalties. They prayed for damages and costs. On June 11, 1993, SEECO filed a Petition for Preliminary Injunction stating that the Browns had denied the company access to the land to allow it to drill a second well and praying that they be enjoined from interfering. SEECO alleged that the Browns would not be harmed by drilling a second well but that SEECO's inability to drill disrupted its program and adversely affected its royalty owners in the unit. On June 30, 1993, the Browns moved for summary judgment on their complaint. A hearing was then held before the chancellor on the petition for preliminary injunction and the motion for summary judgment.

The Chancellor issued his letter opinion on July 19, 1993, denied the motion for summary judgment, and granted the preliminary injunction. With respect to the preliminary injunction, the chancellor wrote: "As for the Petition for Preliminary Injunction, I find that it should be granted and that a bond of twenty thousand dollars ($20,000) should be posted prior to the defendant entering upon the property of the plaintiffs."

On July 28, 1993, the Chancellor filed an order granting the preliminary injunction. In the order, the chancellor stated:

> Both parties offered testimony at the hearing and made arguments in support of and in opposition to the petition for preliminary injunction. Upon the basis of the testimony introduced at the hearing, the briefs submitted by counsel, and the arguments of counsel made at the hearing, the Court concludes that the petition for preliminary injunction should be, and hereby is, granted conditioned upon SEECO, Inc. posting a bond with the Clerk of the Court in the amount of $20,000.

The Browns' counsel approved the order of injunction as to form.

On August 11, 1993, the Browns filed in this court a motion to stay or dissolve the temporary injunction pending appeal. They contended in this motion, as they now do on appeal, that the injunction was defective due to no finding of irrevocable harm and noncompliance with Ark. R. Civ. P. 65(e). We denied the motion without prejudice to raise the same issues on appeal.

The Browns first contend that there was no showing of irreparable harm or lack of an adequate remedy at law. Embraced in this argument is an alleged failure by SEECO to establish a likelihood of success on the merits. They point out, in addition, that the chancellor made no finding on these points. The record, however, does not reflect that the Browns requested additional findings of fact pursuant to Ark. R. Civ. P. 52(b), after the temporary injunction was granted.

We review chancery matters, including the grant of an injunction, *de novo* on appeal. *Southeast Ark. Landfill, Inc.* v. *State*, 313 Ark. 669, 858 S.W.2d 665 (1993); *Knowles* v. *Anderson*, 307 Ark. 393, 821 S.W.2d 466 (1991). The grant of an injunction rests within the sound discretion of the chancellor. *Southeast Ark. Landfill, Inc.* v. *State, supra; American Trucking Ass'n* v. *Gray*, 280 Ark. 258, 657 S.W.2d 207 (1983). Where the record supports a finding of irreparable harm or likelihood of success on the merits, we have been unable to say that the chancery court abused its discretion. *See, e.g., W.E. Long Co.* v. *Holsum Baking Co.*, 307 Ark. 345, 820 S.W.2d 440 (1991).

We begin by examining the evidence presented by SEECO in support of its claim of irreparable harm. In its petition for preliminary injunction, SEECO asserted that it would suffer harm if it was not allowed to drill the well because its developmental drilling program would be disrupted in Section 2. Bill Winkelmann, the Senior Exploration Geologist for Southwestern Energy, SEECO's parent company, testified that the development project had been "in full swing" for at least two years following a geological study spanning several years. He also stated that the company had planned to drill in the area of the Post well for "probably two years." Winkelmann stated that he believed that a new well would relieve the drainage caused by off-setting wells in adjoining units drilled by other companies; specifically, a Mueller well in Section 1 drilled in 1992. He stated that drilling an addi-

tional well on the Browns' property would minimize the drainage loss and that the well could be drilled within two weeks, were an injunction to be granted. Without a second well, he testified that SEECO and the unit royalty owners in Section 2 would continue to be harmed.

■■ Harm normally is only considered irreparable when it cannot be adequately compensated by money damages or redressed in a court of law. *Compute-A-Call, Inc.* v. *Tolleson and Jones*, 285 Ark. 355, 687 S.W.2d 129 (1985); *Kreutzer* v. *Clark*, 271 Ark. 243, 607 S.W.2d 670 (1980). We are not prepared to say, based on what is before us, that the loss occasioned by the disruption of SEECO's development program and its detrimental impact on royalty owners could be recouped by an award of damages. Moreover, we are not persuaded that the Browns are likely to prevail on the merits. Certainly there is enough in the record to support these conclusions. Accordingly, the chancellor did not abuse his discretion in issuing the order of injunction.

We turn next to the form of the injunction order and the Browns' argument that it failed to conform with the requirements of Ark. R. Civ. P. 65(e). Prior to the submission of this appeal, the Browns filed before this court a motion to stay or dissolve the temporary injunction in which they asserted that the order of injunction, on its face, violated the requirements of Rule 65(e). This court denied the motion without prejudice to raise it for consideration as part of their appeal. In their brief, the Browns raise the identical argument challenging the form and substance of the order as deficient under Rule 65(e).

■ Though the order of injunction does appear to be deficient on its face under Rule 65(e) due to vagueness, the Browns failed to raise this issue to the chancellor. Indeed, counsel for the Browns approved the order of injunction as to form. Ordinarily, such an approval would have no bearing on an appeal concerning the substance of the order. *Spencer* v. *Spencer*, 275 Ark. 112, 627 S.W.2d 550 (1982). But that approval is distinctly at odds with the Browns' contention that the order is defective *in its form* due to lack of specificity. In any case, we refuse to consider this issue because we have made it clear that in order to preserve an issue for appeal, the issue must be presented to the trial court for resolution. *See, e.g., Stewart Title Guaranty Co.* v. *Treat*, 306 Ark.

289, 810 S.W.2d 953 (1991); *Crowder* v. *Crowder*, 303 Ark. 562, 798 S.W.2d 425 (1990). That was never done in this case.

We are aware that in its Statement of the Case SEECO states that it has already drilled a second well on the Browns' property. If in fact this has occurred and the order of injunction only applies to that well recently drilled, then the issue is moot. We do not consider moot issues on appeal with certain limited exceptions. *Enviroclean, Inc.* v. *Arkansas Pollution Control*, 314 Ark. 98, 858 S.W.2d 116 (1993). Because the issue of mootness is unclear and not a matter evidenced in the record or argued by counsel, we have proceeded to address the merits of this appeal.

The order of the chancellor is affirmed.