CUSTOM MICROSYSTEMS, INC. *v.* Del BLAKE

01-24                                                    42 S.W.3d 453

Supreme Court of Arkansas
Opinion delivered April 26, 2001
[Petition for rehearing denied May 31, 2001.]

*Cross, Gunter, Witherspoon & Galchus, P.C.,* by: *Allen C. Dobson* and *Melissa McJunkins Duke,* for appellant.

*Watkins & Scott, PLLC,* by: *John R. Scott,* for appellee.

R OBERT L. BROWN, Justice. This case presents one issue on appeal: Did the chancery judge err in denying the motion of appellant Custom Microsystems, Inc. (CMI), for a preliminary injunction against appellee Del Blake on the basis that CMI had not shown a likelihood of success on the merits? We conclude that the chancery judge did not abuse his discretion in refusing to order a preliminary injunction, and we affirm that order.

On November 16, 1998, Del Blake began working for CMI. CMI is in the business of providing computer services to customers and has its principal place of business in Little Rock. On March 9, 1999, Blake signed an "Employee Agreement on Intellectual Property and Confidentiality" (Employment Agreement) with CMI. This Employment Agreement provided the following with regard to Blake's ability to be hired by a client of CMI after his employment with CMI ended:

7. When my employment ends, ... I agree that I will not do any of the following within one year from the end of my employment, without Custom Microsystems' prior written consent; ... (3) be employed, either directly or indirectly, by any person or entity which has been a client of Custom Microsystems within the one year period immediately preceding the end of my employment with Custom Microsystems.

....

11. If I do not abide by this Agreement, I agree that Custom Microsystems may enforce this Agreement by, among other things, obtaining an injunction in a court in Pulaski County, Arkansas.

As early as 1998, the National Guard, which was a client of CMI, approached CMI to teach CISCO classes to its employees. CISCO makes available a hardware product for routing data to various locations and requires considerable software programming. Blake was interested in becoming a CISCO certified instructor, and CMI was interested in providing CISCO instruction to its customers like the National Guard. Only six companies in the United States were authorized to teach CISCO classes and to certify CISCO instructors. Global Knowledge Network, Inc. (Global Knowledge), formerly known as GeoTrain Corporation, which has its principal place of business in Dallas, Texas, was one of the six companies.[1] In August 1999, Blake received his certification as a CISCO instructor from Global Knowledge. CMI allegedly paid $20,833 to train Blake. Also, in August 1999, CMI and Global Knowledge executed a Consulting Instructor Agreement (Instructor Agreement), whereby Global Knowledge would use Blake to teach CISCO classes to customers for a period of one year and pay CMI $800 or $900 per day for using Blake. CMI agreed that it would do what was necessary to maintain Blake's CISCO certification.

Blake then began instructing customers in CISCO technology for five out of every eight weeks through Global Knowledge, and Global Knowledge paid CMI a monthly fee for Blake's services. Global Knowledge held Blake's CISCO certification, and all CISCO courses taught by Blake had to be approved by Global Knowledge. On May 5, 2000, Blake resigned his position at CMI.

---

[1] For ease of reference, this opinion will refer only to Global Knowledge rather than to its predecessor company, GeoTrain Corporation.

On or about May 16, 2000, he began working for Global Knowledge as an employee. He performed the same duties at Global Knowledge as he had as an employee of CMI, when teaching CISCO classes and working through Global Knowledge.

On June 28, 2000, CMI filed a complaint against Blake and alleged breach of contract. CMI prayed for a preliminary and a permanent injunction as well as for $20,833 in damages. On that same date, CMI moved for a preliminary injunction and prayed that Blake, pursuant to the Employment Agreement, be enjoined from employment with Global Knowledge or any other former client of CMI for a period of one year from the date he ended his employment with CMI. Blake filed a motion to dismiss for lack of venue. On September 19, 2000, a hearing was held on the motion for preliminary injunction and the motion to dismiss, and testimony was taken from CMI witnesses and Blake. On October 3, 2000, the chancery judge denied CMI's motion for preliminary injunction and said in its order that CMI did not show a "likelihood of succeeding on the merits at a full hearing on the issuance of an injunction." Specifically, the chancery judge found that CMI did not prove that Blake breached his Employment Agreement because it did not show that Global Knowledge was a "client." The judge added in his findings that "the mere existence of a contract between the two companies [CMI and Global Knowledge] does not require a finding that Global was a 'client' within the customary meaning of the word. Rather, Global's relationship was more akin to that of an independent contractor."

We turn then to the sole issue before us, which is whether the chancery judge abused his discretion in refusing to issue the preliminary injunction against Blake.

■■ This court reviews chancery matters, including injunctions, *de novo* on appeal. *See Brown v. Seeco, Inc.*, 316 Ark. 336, 871 S.W.2d 580 (1994). The decision to grant or deny an injunction is within the discretion of the chancery judge. *Id; see also Smith v. American Trucking Ass'n, Inc.*, 300 Ark. 594, 781 S.W.2d 3 (1989). We will not reverse the chancery judge's ruling unless there has been an abuse of discretion. *Wilson v. Pulaski Ass'n of Classroom Teachers*, 330 Ark. 298, 954 S.W.2d 221 (1997); *McCuen v. Harris*, 321 Ark. 458, 902 S.W.2d 793 (1995). Furthermore, when considering an order that grants or denies an injunction, this court will not delve into the merits of the case further than is necessary to determine whether the chancery court exceeded its discretion. *Villines v. Harris*, 340 Ark. 319, 11 S.W.3d 516 (2000). In *Villines,*

this court recognized that the sole question before it was whether the court departed from the rules and principles of equity in making its order and not whether this court would have made the order. *Id.* at 323, 11 S.W.3d at 519.

■ In determining whether to issue a preliminary injunction pursuant to Rule 65 of the Arkansas Rules of Civil Procedure, this court considers whether irreparable harm will result in the absence of a preliminary injunction and whether the moving party has demonstrated a likelihood of success on the merits. *See W.E. Long Co. v. Holsum Baking Co.*, 307 Ark. 345, 820 S.W.2d 440 (1991); *Brown v. Seeco, Inc., supra; Smith v. American Trucking Ass'n, Inc., supra.* In the case at hand, the pivotal focus of the chancery judge was on whether CMI had sufficiently proved such a likelihood of success. As a result, our initial inquiry must be what definition or standard do we employ in our analysis of whether the moving party has shown a likelihood of success on the merits.

CMI directs our attention to a case handed down by the Eighth Circuit Court of Appeals in which that court concluded that the probability of success on the merits does not require the party seeking the injunction to prove a greater than fifty percent likelihood that the movant will prevail. *See Dataphase Systems. Inc. v. C.L. Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981). In *Dataphase*, the Eighth Circuit looked to four factors in determining whether a preliminary injunction should issue: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other litigating parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Id.* at 113. The *Dataphase* court reasoned that the very nature of the inquiry for preliminary injunctive relief militates against a "wooden application" of a probability of success on the merits. *Id.* Instead, the *Dataphase* court chose to determine whether the "balance of equities," looking at all four factors, so favors the moving party that justice requires the court to intervene and grant preliminary relief to "preserve the status quo until the merits are determined." *Id.* By taking this approach, the Eighth Circuit sent the message that a district court should be flexible enough to look to all four factors and to the particular circumstances of each case in deciding whether a preliminary injunction should issue rather than solely making the decision based on the probability that the moving party will succeed on the merits.

■ ■ The Eighth Circuit Court of Appeals, of course, is not binding authority for this court. Moreover, it appears that in our

more recent decisions, this court has not wavered in our requirement that the movant for a preliminary injunction prove that there is a likelihood that the movant will succeed on the merits. In *W.E. Long Co. v. Holsum Baking Co.*, *supra*, we said that in order to grant a preliminary injunction, the movant "must establish that it will likely prevail on the merits at trial." *Id*. at 351, 820 S.W.2d at 443 (citing *Smith v. American Trucking Ass'n, Inc.*, *supra*. In *Smith v. American Trucking Ass'n, Inc.*, *supra*, this court said that "a party seeking a preliminary injunction *must* demonstrate a likelihood of success on the merits of the claim for a permanent injunction *as well as* the likelihood that, absent granting of preliminary relief, irreparable harm will occur." *Id*. at 596, 781 S.W.2d at 4 (emphasis added). We have never adopted a flexible test where we "balance the equities," such as the Eighth Circuit adopted in *Dataphase*. And we decline to do so today.

▪ The definition of "likelihood of success on the merits" can be found in *Black's Law Dictionary*. In *Black's*, the likelihood-of-success-on-the-merits test is: "The rule that a litigant who seeks a preliminary injunction, or seeks to forestall the effects of a judgment during appeal, must show a reasonable probability of success in the litigation on appeal." *Black's Law Dictionary* 938 (7th ed. 1999). We agree that a reasonable probability of success is a benchmark for issuing a preliminary injunction.

Bearing that standard in mind, we turn to the question of whether the chancery judge correctly concluded that Global Knowledge was not a "client" of CMI for purposes of the Employment Agreement between CMI and Blake. The chancery judge specifically found:

> While Defendant has become employed with a company formerly known as GeoTrain, now known as Global Knowledge, [CMI] did not establish that Global was a "client" of Custom Microsystems, and therefore [CMI] failed to establish that [Blake] breached his employment contract. The Court finds that the mere existence of a contract between the two companies does not require a finding that Global was a "client" within the customary meaning of the word. Rather, Global's relationship with [CMI] was more akin to that of an independent contractor.

▪ We turn again to *Black's Law Dictionary* for a definition of "client." That definition reads: "A person or entity that employs a professional for advice or help in that professional's line of work." *Black's Law Dictionary* 247 (7th ed. 1999). CMI emphasizes to this

court that its former partner and manager, Terry Johnson, testified that he negotiated a contract with Global Knowledge on behalf of CMI to provide the services of CMI's employee, who was Blake. He pointed out that Blake provided those services and Global Knowledge paid for them. CMI also alludes to the testimony of its president and CEO, Jeff Johnson, that Global Knowledge was a client of CMI's and that CMI sent bills to Global Knowledge and Global Knowledge paid those bills. According to CMI, after Blake terminated his employment with CMI, CMI no longer received any business from Global Knowledge. Finally, CMI urges that even if the chancery judge was correct that Global Knowledge was more of an independent contractor, this does not necessarily decide the issue of whether Global Knowledge was also CMI's client.

■ In the instant case, in order to reverse the chancery judge, we would first have to conclude that the chancery judge clearly erred in his finding of fact that Global Knowledge was not a client of CMI. *See* Ark. R. Civ. P. 52(a). In order to find that the chancery judge clearly erred, this court, after reviewing the entire evidence, would have to be left with a definite and firm conviction that a mistake had been committed. *See Norman v. Norman*, 342 Ark. 493, 30 S.W.3d 83 (2000); *O'Fallon v. O'Fallon ex rel. Ngar*, 341 Ark. 138, 14 S.W.3d 506 (2000). We are not firmly convinced that the chancery judge made such a mistake in finding that Global Knowledge was not CMI's client.

■ For one thing, the relationship between the two companies does not appear to have been your typical professional-client relationship. Blake was trained as a CISCO instructor under the guidance of Global Knowledge. CMI then "loaned" Blake to Global Knowledge so that Blake could teach CISCO classes through Global Knowledge. Global Knowledge held Blake's CISCO certification and controlled what CISCO classes Blake could teach. Blake, during this period, remained a CMI employee. CMI benefitted from this arrangement because it could not provide CISCO instruction on its own, and it was using Global Knowledge to provide this service and reap some income. Global Knowledge benefitted in that it had an additional CISCO instructor for its classes and, no doubt, also profited. Thus, the arrangement was not one in which CMI was solely providing a professional service to Global Knowledge. Rather, CMI was using Global Knowledge so that Blake could teach CISCO classes through that company, presumably to customers of both CMI and Global Knowledge. We cannot say that the chancery judge clearly erred in finding that Global Knowledge was not a client of CMI with respect to Blake.

The finding that Global Knowledge was not a CMI client was the factual linchpin of the chancery judge's conclusion that the Employment Agreement had not been violated and that an injunction should not issue. We hold that the chancery judge did not abuse his discretion in refusing to issue the preliminary injunction.

Affirmed.