182 S.W.3d 107 (2004)
357 Ark. 413
Jane DOE and Jane Roe
v.
ARKANSAS DEPARTMENT OF HUMAN SERVICES, Office of Long Term Care; Kurt Knickrehm, in His Official Capacity As Director of the Arkansas Department of Human Services; and Carol Shockley, in Her Official Capacity as Director of the Office of Long Term Care.
No. 03-1306.
Supreme Court of Arkansas.
May 20, 2004.
*108 Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., by: John K. Baker, David P. Glover, and Bryan G. Looney, Little Rock, for appellants.
Mike Beebe, Att'y Gen., by: C. Joseph Cordi, Jr., Ass't Att'y Gen., Little Rock, for appellees.
TOM GLAZE, Justice.
This appeal arises out of a complaint and motion, filed on September 22, 2003, in the Pulaski County Circuit Court by Jane Doe and Jane Roe. Roe and Doe sought a declaratory judgment and injunctive relief, including a temporary restraining order enjoining the Arkansas Department of Human Services' Office of Long Term Care ("OLTC") from implementing one of the OLTC's rules. That rule, LTC-A-2003-14 ("the Rule"), provides that the OLTC will receive and review expunged criminal records from the Arkansas State Police in order to determine employment eligibility for OLTC employees. Jane Doe and Jane Roe are pseudonyms for women who are Certified Nursing Assistants ("CNAs") who had been employed at the same family-owned long-term care facility. Doe had worked at the facility since June of 2000, and Roe had worked there since July of 2002.
In May of 1999, Doe was charged with shoplifting, and she entered a plea of nolo contendere on November 15, 1999. She was sentenced to thirty days in the county detention center, but the thirty days were suspended conditioned on good behavior and payment of her fine and costs. In January of 2002, Doe petitioned the circuit court to expunge her record pursuant to Act 346 of 1975,[1] and on January 14, 2002, the circuit court granted her petition. Similarly, Roe had been convicted of theft of property, and later, in November of 2002, the circuit court found that Roe had been sentenced under the First Offenders Act, Ark.Code Ann. § 16-93-301 et seq. (Supp.2001). The court then expunged Roe's criminal record by sealing it after finding that Roe had satisfactorily complied with the court's orders.
On April 30, 2003, Carol Shockley, the Director of OLTC, issued memorandum LTC-A-2003-14 to nursing facilities and independent care facilities throughout the *109 state. In this memo, Shockley informed those facilities that an Attorney General opinion had recently been issued in response to "several questions" submitted by the Director of the Arkansas State Police, Don Melton. According to Shockley, the opinion stated that "it was the legislature's intent that persons whose criminal records have been expunged of the listed offenses are not eligible for employment in long-term-care facilities." Further, Shockley noted, the opinion included specific reference to the Arkansas Elder Care Statute, Ark.Code Ann. § 20-33-205 (Supp.2003), which, Shockley stated, "is the basis of the regulations for criminal record checks for employees of long-term-care facilities. Therefore, effective immediately, the Office of Long Term Care shall be receiving expunged records from the ASP/[Identification Bureau] and the determination of employment eligibility shall include all records listed on the report."
As previously noted, Doe and Roe filed this lawsuit on September 22, 2003, which included a motion for a preliminary or temporary restraining order, seeking to enjoin OLTC from receiving expunged records from the State Police. They also sought a declaration that OLTC's policy of receiving such records was invalid and unenforceable.[2] Following a hearing on October 2, 2003, the trial court entered an order denying Doe and Roe's requests for relief. In its order, the trial court found Doe and Roe had demonstrated irreparable harm, but stated that it did not believe that Doe and Roe had shown a likelihood of succeeding on the merits of their claim to declare the Rule "contrary to or in excess of Arkansas statutory law, unenforceable, and invalid in light of Arkansas' expungement statute," Ark.Code Ann. § 16-90-901, et seq.
Doe and Roe appeal from the trial court's order, and argue that, while the trial court correctly determined they had demonstrated irreparable harm, the court erred in concluding that they had failed to demonstrate a likelihood of succeeding on the merits of their underlying claim for declaratory relief. However, we hold the trial court erred in ruling that Doe and Roe had adequately shown that they would sustain irreparable harm. Therefore, we affirm the trial court's decision on this issue, and find it unnecessary to reach and decide whether Doe and Roe showed a likelihood of succeeding on the merits of their underlying claim for declaratory relief.
The decision to grant or deny an injunction is within the discretion of the trial court. Custom Microsystems v. Blake, 344 Ark. 536, 42 S.W.3d 453 (2001), and we will not reverse the trial court's ruling unless there has been an abuse of discretion. Wilson v. Pulaski Ass'n of Classroom Teachers, 330 Ark. 298, 954 S.W.2d 221 (1997); McCuen v. Harris, 321 Ark. 458, 902 S.W.2d 793 (1995). Furthermore, when considering an order which grants or denies an injunction, this court will not delve into the merits of the case further than is necessary to determine whether the trial court exceeded its discretion. Villines v. Harris, 340 Ark. 319, 11 S.W.3d 516 (2000).
In determining whether to issue a preliminary injunction, this court considers whether irreparable harm will result in the absence of a preliminary injunction and *110 whether the moving party has demonstrated the likelihood of success on the merits. Custom Microsystems, supra. As stated above, the trial court based its decision on the fact that Doe and Roe had not demonstrated a likelihood of success on the merits. However, even if Doe and Roe prevailed on the merits of their underlying claim, they would not suffer irreparable harm. In other words, the trial court in this case can be affirmed for reaching the right result, even if for the wrong reason. See HRR Arkansas, Inc. v. River City Contrs., Inc., 350 Ark. 420, 429, 87 S.W.3d 232, 238 (2002). Here, Doe and Roe simply failed to show they would be irreparably harmed in the absence of the issuance of an injunction.
The State submits that the loss of a job is not the type of irreparable harm that will justify extraordinary injunctive relief because any wrongful and illegal loss of employment can be fully compensated by money damages. See, e.g., Kreutzer v. Clark, 271 Ark. 243, 607 S.W.2d 670 (1980) (doctor could not demonstrate irreparable harm, despite claim that he stood to lose a $100,000 per year job, because any harm could be adequately compensated by money damages or addressed in a court of law); see also Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp., 59 F.3d 80 (8th Cir.1995) (holding that the loss of a job is "quintessentially reparable by money damages"). The State also asserts that Doe and Roe could be adequately compensated by the State Claim Commission if they are unemployed because of the application of the OLTC's background check policy.
Doe and Roe argue that Kreutzer and Unity Hospital are distinguishable, in that they are not confronted with the loss of a single job, but instead face the inability to work at any long-term-care facility in the State, "effectively stripping them of their certification as certified nursing assistants."[3] They also assert that they are not just losing their jobs, but they are also being forever branded as criminals. Finally, in response to the State's suggestion that they can pursue any relief before the Claims Commission, Doe and Roe assert that any such "remedy" is a "contingent remedy," because the payment of any award would be conditioned on an appropriation of funds by the General Assembly. See Bumgarner v. Bloodworth, 738 F.2d 966 (8th Cir.1984).[4]
We believe that this court's holding in Kreutzer is controlling, and that Doe and Roe's attempts to distinguish the case are unavailing. As in Kreutzer, the court "need not indulge in speculation about appellant's future employment opportunities in deciding the legal question here. No ground is lost by a denial of the interlocutory order which cannot be recouped in a court of law by a favorable judgment and an award of money damages." Kreutzer, 271 Ark. at 245, 607 S.W.2d 670. See also Manila School Dist. No. 15 v. Wagner, 357 Ark. 20, 159 S.W.3d 285 (2004) (where School Superintendent Wagner alleged harm that would result from her loss of job would include loss of salary, the possibility she may have to relocate to obtain similar employment, and potential damage to her reputation).
In conclusion, we note Doe and Roe's argument that the State is clearly in violation of Ark.Code Ann. § 16-90-902 (Supp. *111 2001)[5] and Arkansas public policy. Citing McClish v. State, 331 Ark. 295, 962 S.W.2d 332 (1998), they argue that it is obvious that Arkansas has adopted a "second chance" policy to provide certain, eligible individuals a clean slate to make a positive contribution to society. They further contend that there is nothing in § 22-33-205 that provides the OLTC authority to act contrary to this policy. Their argument, however, ignores the express purpose of § 20-33-205 of Arkansas's Elder Care law, which recognizes that sometimes persons providing care to the elderly or individuals with disabilities have criminal histories that impair their ability to provide adequate care. See Emergency Clause of Act 990 of 1997. Here, the General Assembly specifically enumerated those criminal offenses that disqualify a person or Elder-Choices provider; those offenses include theft of property, which was the offense committed by Doe and Roe. See Ark.Code Ann. § 20-33-205(a)(3)(A), (B) and (b)(24) (Supp.2003). It is within the General Assembly's authority to change or amend laws and public policy in this matter. See Nabholz Constr. Corp. v. Graham, 319 Ark. 396, 892 S.W.2d 456 (1995). Meanwhile, as discussed above, based on our review of the record and arguments, we hold that Doe and Roe's remedy is for damages in a court of law, and it is for the reasons set out above that we affirm the trial court's decision as modified.
IMBER, J., concurs.
HANNAH, J., dissents.
THORNTON, J., not participating.
JIM HANNAH, Justice, dissenting.
I respectfully dissent. The majority errs for two reasons. First, Doe and Roe show irreparable harm because it is not the loss of a job that is at issue in this case as it is in the cases cited by the majority, but rather the loss of a career. By holding that an expunged conviction for theft means Doe and Roe may be fired from their jobs at the long-term care facility, the court forces them at the least to seek employment in a facility not covered by the elder-care provisions. Likely, the impact is far broader. The cite to Kreutzer v. Clark, 271 Ark. 243, 607 S.W.2d 670 (1980), is in error. In Kreutzer, the doctor lost a job at a hospital and continued to practice medicine. There is reference in that case to Kreutzer's concern that his patients might be concerned at his loss of the position. Doe and Roe had nothing when they left their jobs and no hope of finding another job caring for the elderly, their chosen vocation. While certified nursing assistants are utilized in other areas of medicine, most jobs in that field are caring for the elderly, and it is also doubtful that Doe and Roe will have much luck getting a job in other health care areas when the reason for their termination is known.[6]
*112 This gives rise to the second reason that I must dissent. Whether the opportunity to obtain expungement is admired or hated, it is the law. It is intended to provide the offender with the opportunity to "apply for a job" and enjoy his or her civil rights and liberty. McClish v. State, 331 Ark. 295, 299, 962 S.W.2d 332 (1998). As the majority notes, Ark.Code Ann. § 16-90-205(a) (Supp.2003) provides that expungement applies "unless otherwise specifically provided for by law." Without analysis, the majority then notes that the elder law provision set out at Ark.Code Ann. § 20-33-205(b)(24) (Supp.2003) sets out theft as an offense precluding future employment. Nowhere in section 20-33-205 is expungement even mentioned. How then is the exclusion of expungement of the offense "specifically provided for by law," as required by section 16-90-902? It is not. Section 16-90-902 was enacted in 1995, before section 20-33-205 was enacted. In State v. Warren, 345 Ark. 508, 49 S.W.3d 103 (2001), Warren's conviction was expunged. Of expungement the court stated:
Upon expungement, pursuant to the terms of that Act, Mr. Warren was "discharged without court adjudication of guilt," the charges against him were dismissed, the records were sealed, and Mr. Warren was "completely exonerated of any criminal purpose." Act 346 of 1975, codified at Ark.Code Ann. § 16-93-301,-303(b)(1) and (2) (1987).
Warren, 345 Ark. at 511, 49 S.W.3d 103. Doe and Roe's convictions were expunged, and they stand in the same position as Warren.
For the foregoing reasons, I respectfully dissent.
NOTES
[1] Act 346 was later amended by Act 998 of 1995, codified at Ark.Code Ann. § 16-93-301 (Supp.2001).
[2] The complaint was filed pursuant to the Arkansas Administrative Procedures Act, Ark.Code Ann. § 25-15-207(a) (Repl.2002), which provides that "[t]he validity or applicability of a rule may be determined in an action for declaratory judgment if it is alleged that the rule, or its threatened application, injures or threatens to injure the plaintiff in his person, business, or property."
[3] However, Doe and Roe cite no statute or authority that makes the exception to the expungement statute applicable to health-care facilities other than long-term care facilities.
[4] We need not address this particular aspect of the State's argument, since Doe and Roe's remedy is in a court of law.
[5] (a) An individual whose record has been expunged in accordance with the procedures established by this subchapter shall have all privileges and rights restored, shall be completely exonerated, and the record which has been expunged shall not affect any of his civil rights or liberties, unless otherwise specified by law.

(b) Upon the entry of the uniform order to seal records of an individual, the individual's underlying conduct shall be deemed as a matter of law never to have occurred, and the individual may state that no such conduct ever occurred and that no such records exist.
(Emphasis added.)
[6] The majority also cites Manila Sch. Dist. No. 15 v. Wagner, 357 Ark. 20, 159 S.W.3d 285 (2004), for the same proposition as Kreutzer v. Clark, 271 Ark. 243, 607 S.W.2d 670 (1980). As in Kreutzer, the person losing her job in Manila was not being deprived of her profession, but would simply be required to find another job elsewhere.