2014 Ark. App. 254

**Troy Russell JOHNSON, Deborah M. Johnson, Brett Johnson, and Rusty Johnson, Appellants**

v.

**Henk De KROS, Anna Maria Peta van Heteren, Bart Marinus De Kroes, Carolina De Kroes, Lilliance E.B. van Heteren and Krovest Plantation B.V., d/b/a Riverbend Plantation, Appellees.**

No. CV–13–785.

Court of Appeals of Arkansas.

April 30, 2014.

---

Robert R. Cortinez, II, Little Rock, for appellants.

Dover Dixon Home PLLC, Little Rock, by: Thomas S. Stone, Cal McCastlain, and Carl F. "Trey" Cooper, III, for appellees.

ROBERT J. GLADWIN, Chief Judge.

Appellants Troy Russell Johnson, Deborah M.Johnson, Brett Johnson, and Rusty Johnson (Johnsons) own certain property adjacent to appellees Henk de Kros, Anna Maria Petra van Heteren, Bart Marinus de Kroes, Carolina de Kroes, Lilliance E.B. van Heteren, and Krovest Plantation B.V., d/b/a Riverbend Plantation (Riverbend).[1] The Johnsons appeal the Pulaski County Circuit Court's order[2] granting Riverbend summary judgment, permanently enjoining the Johnsons from trespassing on Riverbend's property.[3] On appeal, the Johnsons argue that the circuit court erred by (1) granting the injunction, and (2) disallowing the United States of America to be named as a party to this action via a third-party complaint. We affirm.

I. *Statement of Facts*

Riverbend filed its complaint against the Johnsons on January 12, 2012, seeking to enjoin them from trespassing onto its property—a pond—to hunt and fish. Riverbend owns property to the north of the Johnsons' property, and the parties share a common boundary line. Riverbend alleged that the Johnsons executed an easement (Pond Easement) to the U.S. that permits the overflow of water from Riverbend, north of the Johnson property, onto the Johnson property, should that event occur. Riverbend claimed that the Pond Easement did not grant to the Johnsons any right to go onto Riverbend, and the easement did not grant the Johnsons any right to cross the boundary line onto Riverbend. Further, Riverbend claimed that the Johnsons had represented to others that the Pond Easement granted them the right to trespass on Riverbend property and to authorize third parties to do so as well. Riverbend sought to enjoin the Johnsons from trespassing and restitution for all the sums the Johnsons received from charges to third parties for hunting and fishing on Riverbend property.

The Johnsons answered, claiming that Riverbend's complaint should be dismissed for failure to join a necessary party, the U.S., because it had the superior right and title to water and wildlife on the land based on an easement. The "Warranty Easement Deed," signed by Riverbend in exchange for around $1.5 million, places

---

1. The record spells de Kros two ways: de Kros and de Kroes.

2. This order also enjoins Riverbend from going on to the Johnsons' property and was subject to any change in the boundary line between the parties' property that might result from the Johnsons' adverse possession claim, which is still pending in the circuit court.

3. An appeal may be taken from an interlocutory order by which an injunction is granted. Ark. R.App. P.—Civ. 2(a)(6) (2013).

Riverbend's property into a Wetlands Reserve Program (WRP) by the U.S. Department of Agriculture (USDA). Based on the Warranty Easement Deed between Riverbend and the U.S., the Johnsons claim that the water and wildlife on the property are now in the public domain, and all members of the public have a right to access the waters to hunt the wildlife.

The Warranty Easement Deed, signed by Riverbend as grantor and the U.S. as grantee, reserves to Riverbend the following:

A. Title. Record Title, along with the Landowner's right to convey, transfer, and otherwise alienate title to these reserved rights.

B. Quiet Enjoyment. The right of quiet enjoyment of the rights reserved on the easement area.

C. Control of Access. The right to prevent trespass and control access by the general public.

D. Recreational Uses. The right to undeveloped recreational uses, including hunting and fishing, and including leasing of such rights for economic gain, pursuant to applicable State and Federal regulations that may be in effect at the time.

E. Subsurface Resources. The right to oil, gas, minerals, and geothermal resources underlying the easement area

. . .

Riverbend filed a motion for summary judgment on March 1, 2012, alleging that it had posted "no hunting" and "no fishing" signs on its property. Yet, despite the postings, the Johnsons and their invitees had trespassed and continued to trespass on Riverbend's land under the mistaken belief that the Warranty Easement Deed converted the land for public use. Riverbend sought an injunction and an accounting for all sums received by the Johnsons from payments charged to persons for hunting on Riverbend's property without permission.

The Johnsons filed a motion for leave to file a third-party complaint against the U.S., and Riverbend objected. On May 14, 2012, the Johnsons filed an amended answer and counterclaim against Riverbend for trespass, establishment of a boundary, nuisance, declaration of a public-use easement, and defamation. On that same date, the Johnsons filed a preliminary response to Riverbend's motion for summary judgment, arguing that the U.S. controlled the property subject to the Warranty Easement Deed. In the memorandum in support of their response, the Johnsons expound on the flood project and contend that the water area is connected to, and accessible from, the Arkansas River, which is a navigable river under the complete control of the Army Corps of Engineers. The Johnsons contend, thus, that the "pond" at issue is part and parcel of a federally recognized navigable stream and part of the public domain, not subject to private restrictions on its use.

In support of their argument for summary judgment, Riverbend filed an affidavit by Mark Tidwell, a USDA employee who was area coordinator for the WRP for twelve years and is currently a consultant on wetland restoration and management. He stated that a WRP easement does not establish land or a body of water for recreational use by the general public. Its purpose is to restore, manage, maintain, and enhance the functional values of wetlands and other lands. Tidwell was involved in the planning and development of the WRP project on Riverbend's property and was familiar with the Warranty Easement Deed. He stated that Riverbend had the right to control access to the WRP easement area on its property, and that the Warranty Easement Deed did not grant to the U.S. the right to control access to the

WRP easement area on Riverbend's property. Tidwell also stated that water from the Arkansas River flows onto the Riverbend WRP easement area through a flood-gated pipe under the Arkansas River Levee when the river reaches flood stage. He stated that a boat cannot access the Arkansas River from the Riverbend WRP easement area, and a boat cannot pass through the flood-gated pipe under the levee.

The Johnsons filed an affidavit by Deborah Johnson, who stated that Tidwell's testimony contradicts what he and other government representatives had told her regarding the right to use the property at issue. She claimed, "We were expressly told by representatives of the federal government, including its attorney, that we would have the full use of the entire water so long as we used our own property to access the 'pond.'" She stated that the only consideration they received for the Pond Easement was use of the entire pond.

After a hearing where the circuit court heard argument from counsel for both parties, an amended order was filed on June 28, 2012, in which the circuit court denied the Johnsons' motion to file a third-party complaint, held in abeyance Riverbend's motion for summary judgment for ninety days to allow the parties to conduct discovery, and entered a temporary restraining order directing the parties to abide by the boundary line as designated by the boundary markers on the Johnsons' survey.[4]

On November 2, 2012, the Johnsons amended their counterclaim to include an adverse-possession and/or boundary-by-acquiescence claim against Riverbend. Riverbend filed a motion to dismiss the amended counterclaim, arguing that the

Johnsons' claims were moot due to the circuit court's granting of their motion for summary judgment and based on failure to state facts upon which relief could be granted. At the conclusion of a hearing held on November 2, 2012, the circuit court ruled from the bench that it would "continue the injunction from [the Johnsons] getting on [Riverbend's] property and letting anybody else get on the water." The circuit court also stated that it would "pass this thing for sixty days and let y'all come back here and have a hearing on whether there's some type of adverse possession claim."

The precedent prepared by Riverbend's counsel was objected to by counsel for the Johnsons, and no order had been filed reflecting the circuit court's ruling by May 16, 2013, when the parties met for a hearing. The Johnsons explained that they had filed suit against the federal government in federal district court, and they were hesitant to agree to any precedent that might restrict their claims in that case.

On May 28, 2013, the Johnsons filed a motion for summary judgment, asking the circuit court to recognize the existing fence line that separates the parties' boundaries as the boundary line during the pendency of these claims. Riverbend objected.

On June 13, 2013, the circuit court issued its order finding that the Warranty Easement Deed did not "open for use [Riverbend's property] as a recreation area by the general public or the [Johnsons] for any reason." The adverse-possession claim was held in abeyance, and the court permanently enjoined both parties from going onto the other's property. The

---

4. Even though the Johnsons contend that the circuit court denied their motion for leave to file a third-party complaint based on sovereign immunity, the circuit court's order, as amended, does not reflect the court's basis for such ruling.

Johnsons filed a timely interlocutory appeal, and this appeal followed.

## II. Standard of Review

Our supreme court has set forth the following standard of review with regard to motions for summary judgment:

Our standard of review for summary judgment cases is well established. Summary judgment should only be granted when it is clear that there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. The purpose of summary judgment is not to try the issues, but to determine whether there are any issues to be tried. We no longer refer to summary judgment as a drastic remedy and now simply regard it as one of the tools in a trial court's efficiency arsenal. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Our review focuses not only on the pleadings, but also on the affidavits and other documents filed by the parties. Moreover, if a moving party fails to offer proof on a controverted issue, summary judgment is not appropriate, regardless of whether the nonmoving party presents the court with any countervailing evidence.

*Harvest Rice, Inc. v. Fritz & Mertice Lehman Elevator & Dryer, Inc.*, 365 Ark. 573, 575–76, 231 S.W.3d 720, 723 (2006) (citations omitted). The standard is whether the evidence is sufficient to raise a factual issue, not whether the evidence is sufficient to compel a conclusion. *Wagner v. Gen. Motors Corp.*, 370 Ark. 268, 258 S.W.3d 749 (2007).

We are also reviewing the issuance of an injunction. Equity matters, including the granting of an injunction, are reviewed de novo on appeal. *Brown v. SEECO, Inc.*, 316 Ark. 336, 871 S.W.2d 580 (1994). However, the granting of an injunction rests within the sound discretion of the trial court, *id.*, and we will not reverse unless the trial court has abused its discretion. *Doe v. Ark. Dep't of Human Servs.*, 357 Ark. 413, 182 S.W.3d 107 (2004).

## III. Injunction

The Johnsons argue that the circuit court erred in granting Riverbend an injunction prohibiting the Johnsons and others from utilizing a wildlife-management "pond" constructed and paid for with taxpayer funds. The Johnsons claim that the Warranty Easement Deed gives Riverbend control over who may access the water habitat from their land. However, it does not prohibit a member of the general public from accessing the water habitat from the Johnsons' property and then traversing the surface of the water to all other areas of the water habitat. The Johnsons contend that they were told "by the government" that they could use the water habitat at issue so long as they had gained entry to it at a location that was authorized. The Johnsons cite the recreational-navigation doctrine, which is described in *State v. McIlroy*, 268 Ark. 227, 595 S.W.2d 659 (1980), where our supreme court addressed the issue of the Mulberry River's navigability as it passed through McIlroy's property. The court acknowledged navi-

gability based on commercial use and also stated:

> There is no doubt that the segment of the Mulberry River that is involved in this lawsuit can be used for a substantial portion of the year for recreational purposes. Consequently, we hold that it is navigable at that place with all the incidental rights of that determination.

*Id.* at 237, 595 S.W.2d at 665. The Johnsons also cite *Arkansas River Rights Committee v. Echubby Lake Hunting Club*, 83 Ark.App. 276, 126 S.W.3d 738 (2003), for the same proposition. The Johnsons conclude their argument that the circuit court erred in granting the injunction by claiming that the "natural water and wildlife rights" are owned by the U.S. by virtue of the easement, and the pond and surrounding areas are part and parcel of a federal program for the general good of the country, not solely to benefit an individual landowner.

■ Riverbend argues that the circuit court properly granted its motion for summary judgment and was correct to permanently enjoin the Johnsons from entering onto Riverbend's property. Its argument is based on the Warranty Easement Deed's language as recited above, specifically reserving to Riverbend the sole right to prevent trespass and to control access. There is nothing ambiguous or uncertain about the language of the easement.

■ Riverbend also claims that the easement area does not include a navigable waterway. The Johnsons' claim that the easement area is now in the public domain is directly contradicted by the language of the Warranty Easement Deed. The cases cited by the Johnsons are distinguishable from the case at issue. In *McIlroy, supra*, the Mulberry River was at issue, and in *Echubby Lake Hunting Club, supra*, areas were covered by water year round as the result of a dam. Riverbend contends that

the Johnsons' assertion—anytime there is standing water on the easement area, the body of water becomes a navigable stream—is without merit and contrary to Arkansas law. We agree. An owner of part of the bed of a nonnavigable stream has ownership and control of that part of the surface of the stream that lies above the portion of the bed of the stream owned by them. *Medlock v. Galbreath*, 208 Ark. 681, 187 S.W.2d 545 (1945).

■ We also agree with Riverbend's contention that the Johnsons failed to meet proof with proof in order to avoid summary judgment. Riverbend placed in evidence the affidavits, the surveys, the Warranty Easement Deed, and the Pond Easement. The Johnsons did not provide any proof to refute Riverbend's proof. In her affidavit, Deborah Johnson makes statements that contradict statements made by Tidwell. However, her statements, despite any issue of credibility, have no impact on the rights reserved by Riverbend in the Warranty Easement Deed. Accordingly, we affirm.

## II. *Third–Party Claim against U.S.*

■ The Johnsons argue that the circuit court erred in refusing to allow them to bring in the federal government as a necessary party to this action. We do not address the Johnsons' argument because their notice of appeal did not include the order denying the motion to file a third-party complaint. Rule 3(e) of the Arkansas Rules of Appellate Procedure–Civil (2013) provides that a notice of appeal shall, among other things, "designate the judgment, decree, order, or part thereof appealed from." The order denying the Johnsons' motion to name the U.S. in a third-party complaint was filed on June 25, 2012, and amended on June 28, 2012. The notice of appeal designates the order ap-

pealed from was filed June 13, 2013, and contains the injunction that allows this court to assume jurisdiction. Ark. R.App. P.-Civ. 2(a)(6). Pursuant to Rule 3, a notice of appeal must designate the judgment or order appealed from, and an order not mentioned in the notice of appeal is not properly before an appellate court. *See Lindsey v. Green,* 2010 Ark. 118, 369 S.W.3d 1.

Affirmed.

GLOVER and HIXSON, JJ., agree.