STATE of Arkansas *v.* Roger LESTER

CR 00-762                       38 S.W.3d 313

Supreme Court of Arkansas
Opinion delivered February 15, 2001

Mark Pryor, Att'y Gen., by: David R. Raupp, Sr. Ass't Att'y Gen., for appellant.

Otto R. Fry, for appellee.

ANNABELLE CLINTON IMBER, Justice. The State appeals an order of the Pope County Circuit Court declaring Act 1515 of 1999, codified as Arkansas Code Annotated section 16-81-114 (Supp. 1999), unconstitutional and suppressing evidence seized following the warrantless arrest of Mr. Roger Lester. We reverse and remand.

On November 23, 1999, the Clarksville Police Department advised the Russellville Police Department to be on the lookout (BOLO) for a blue Plymouth Horizon, Arkansas license plate number 677 AMD, that had been identified in connection with a recent

"gas drive-off" incident at a Clarksville service-station; that is, the driver of the vehicle had allegedly driven off without paying for gasoline pumped into the vehicle. At approximately mile 82 of I-40, inside the city limits of Russellville, Patrolman Michael Hemmer of the Russellville Police Department initiated a traffic stop of a vehicle matching the description broadcast by Clarksville. The vehicle was being driven by the appellee, Mr. Roger Lester. He was accompanied by his wife. Patrolman Hemmer notified the Clarksville Police Department that he had just stopped a vehicle matching the description in the BOLO message. He then detained the occupants of the vehicle for twenty to thirty minutes until Sergeant Paul Harmon of the Clarksville Police Department arrived at the scene.

Sgt. Harmon placed Mr. Lester under arrest for theft of services. The two officers then conducted a pat-down search of Mr. Lester. During that search, Patrolman Hemmer discovered a pipe of the kind typically used for smoking marijuana in Mr. Lester's left pants pocket. Sgt. Harmon also discovered a baggy in Mr. Lester's right pocket. The baggy contained a small amount of a greenish-brown leafy substance that appeared to be marijuana. When Patrolman Hemmer asked if there was more marijuana in the vehicle, Mr. Lester directed the officers to a cigarette pack inside the vehicle. The officers then proceeded to search the vehicle and found what appeared to be four fresh hand-rolled marijuana cigarettes and two that had already been partially burned.

Mr. Lester was charged with the crime of possession of a controlled substance, second offense, pursuant to Arkansas Code Annotated section 5-64-401(a) and (c) (Supp. 1999). He filed a motion to suppress the evidence seized upon his arrest and asserted that the arrest was in violation of the Fourth and Fourteenth Amendments to the United States Constitution and the Arkansas Rules of Criminal Procedure. Specifically, with regard to the initial stop and detention by Patrolman Hemmer of the Russellville Police Department, Mr. Lester argued that (1) the Russellville officer had no authority to initiate a traffic stop because it was merely a pretext for an investigative stop; (2) no traffic citation ever issued; (3) the Russellville officer did not witness any misdemeanor offense and had no reason to suspect Mr. Lester had committed a felony; and (4) the Russellville officer violated Arkansas Rule of Criminal Procedure 3.1 by detaining him for a period in excess of fifteen minutes.

Mr. Lester also argued that Sgt. Harmon of the Clarksville Police Department had no authority to arrest him because (1) Rule 4.1 of the Arkansas Rules of Criminal Procedure does not authorize a warrantless arrest for an alleged theft of services misdemeanor offense, and (2) Sgt. Harmon illegally arrested him without authority outside of the Clarksville Police Department's jurisdiction. In response, the State produced a copy of an internal memo from the Clarksville Police Department authorizing its officers to make arrests statewide. The State argued that this memo provided Sgt. Harmon with authority to arrest Mr. Lester anywhere within the State for an offense that occurred in Clarksville. The State also argued that Act 1515 of 1999, codified at Ark. Code Ann. § 16-81-114 (Supp. 1999), expressly authorized a misdemeanor warrantless arrest for gas drive-offs.

Both Patrolman Hemmer and Sgt. Harmon testified at a suppression hearing conducted on March 27, 2000. According to their testimony at the hearing, the following facts are undisputed:

- Mr. Lester had been detained in Russellville by Patrolman Hemmer;

- Mr. Lester had committed no traffic offense that led to his stop;

- Mr. Lester was detained solely because of the BOLO message broadcast by the Clarksville Police Department in response to the alleged gas drive-off;

- Mr. Lester was detained for twenty to thirty minutes before Sgt. Harmon arrived and placed him under arrest for theft of services;

- no officer had witnessed the alleged gas drive-off; and

- no warrant was sought for Mr. Lester's arrest.

In an order entered on April 28, 2000, the trial court, upon its own motion, declared Act 1515 to be in violation of the Arkansas Constitution, finding that it is an improper encroachment by the General Assembly upon the powers reserved to the judiciary. Based on that determination, the trial court held that the Russellville Police Department had no authority to stop and detain Mr. Lester and that Ark. R. Crim. P. 4.1 provided no authority for the arrest. Absent authority for the Russellville Police Department to arrest Mr. Lester, the trial court found that the officers had no authority

to conduct a pat down or search. Consequently, the trial court suppressed the evidence seized as a result of the pat down and search. The State now appeals this interlocutory order. We have jurisdiction pursuant to Rule 3(a) of the Arkansas Rules of Appellate Procedure—Criminal.

The State's principal point on appeal is that the trial court erred in declaring Act 1515 unconstitutional. We agree.

■ Act 1515 of 1999, codified as Ark. Code Ann. § 16-81-114 (Supp. 1999), provides that:

> (a) Any person who pumps fuel into a vehicle or container, which fuel is the property of a retail business entity that engages in the sale of fuel, and then leaves the premises with the fuel and without paying for the fuel shall be subject to arrest during the four (4) hours following the event, notwithstanding the lack of a warrant for the arrest.

> (b) Provided, however, the person arrested shall be released within twenty-four (24) hours of the arrest unless a warrant for the arrest of the person is issued according to law.

The trial court held this statute to be an unconstitutional violation of the separation of powers, finding that the General Assembly had improperly encroached upon the powers reserved to the judiciary under the Arkansas Constitution. Statutes are presumed to be constitutional, and the burden of proving otherwise is on the party challenging the statute. *Sera v. State*, 341 Ark. 415, 17 S.W.3d 61 (2000). We resolve all doubts in favor of constitutionality. *Id.*

■■ The Arkansas Constitution divides the government of the State into three separate "departments": legislative, executive, and judicial. Ark. Const. art. 4, § 1. "No person, or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted." Ark. Const. art. 4, § 2. Legislative invasion into the province of the judicial branch is an unconstitutional violation of the separation of powers. *Ball v. Roberts*, 291 Ark. 84, 722 S.W.2d 829 (1987) (holding that statute prohibiting courts from appointing certain attorneys in criminal cases violated separation of powers by encroaching on judiciary's authority to regulate the practice of attorneys).

■■ The Arkansas Constitution confers upon the courts the inherent authority to promulgate rules of procedure. *Miller v. State,* 262 Ark. 223, 555 S.W.2d 563 (1977). However, Article 7, sections 1 and 4, "do·not expressly or by implication confer on this Court exclusive authority to set rules of court Procedure." *Jackson v. Ozment,* 283 Ark. 100, 101, 671 S.W.2d 736, 738 (1984) *overruled on other grounds by Weidrick v. Arnold,* 310 Ark. 138, 835 S.W.2d 843 (1992). The court shares this authority with the General Assembly. *St. Clair v. State,* 301 Ark. 223, 783 S.W.2d 835 (1990); *Curtis v. State,* 301 Ark. 208, 783 S.W.2d 47 (1990). Thus, it is not a violation of separation-of-powers principles for the legislature to enact statutes pertaining to rules of procedure, *St. Clair v. State, supra,* although such statutes may be superseded by the rules promulgated by the judiciary. *See Casement v. State,* 318 Ark. 225, 884 S.W.2d 593 (1994); *Weidrick v. Arnold, supra.*

Rule 4.1 of the Arkansas Rules of Criminal Procedure provides in relevant part that:

> (a) A law enforcement officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed
>
> (i) a felony;
>
> (ii) a traffic offense involving:
>
> (A) death or physical injury to a person; or
>
> (B) damage to property; or
>
> (C) driving a vehicle while under the influence of any intoxicating liquor or drug;
>
> (iii) any violation of law in the officer's presence;
>
> (iv) acts which constitute a crime under the laws of this state and which constitute domestic abuse as defined by law against a family or household member and which occurred within four (4) hours preceding the arrest.

The warrantless arrest of an individual for the misdemeanor offense of theft of services, as is at issue in this case, is clearly not encompassed within the provisions of Rule 4.1 unless the offense occurred in the presence of an officer. It is undisputed that no officer

witnessed the alleged theft by Mr. Lester. Therefore, if Act 1515 is superseded by Rule 4.1, the arrest was invalid.

■ In *Casement v. State, supra,* we reviewed the general state of the law on the subject of conflicts that may arise between laws enacted by the legislature and the rules of criminal procedure promulgated by this court:

> The Arkansas Rules of Criminal Procedure were adopted by this court by per curiam order entered December 22, 1975, to be effective on January 1, 1976, pursuant to Act 470 of 1971, and in harmony with this court's superintending control over the trial courts under our state Constitution. *Matthews v. State,* 268 Ark. 484, 598 S.W.2d 58 (1980). That act specifically authorized this court to prescribe rules of practice and procedure with respect to all criminal case proceedings, and provided further that all laws in conflict with such rules are of no further effect after such rules have taken effect. Section 4, Act 470 of 1971.
>
> We have recognized that, in the interests of promoting important public policies and state interests, the legislature will enact laws which will occasionally conflict with the rules of this court. *State v. Sypult,* 304 Ark. 5, 800 S.W.2d 402 (1990). In that event, we have declared that, to protect against the total abrogation of the rules of procedure vital to the interests and policies of the judicial process, "we will defer to the General Assembly, when conflicts arise, only to the extent that the conflicting court rule's primary purpose and effectiveness are not compromised; otherwise, our rules remain supreme." *Id.* at 7, 800 S.W.2d at 404; *Hickson v. State,* 316 Ark. 783, 785, 875 S.W.2d 492, 493 (1994) ("Statutes are given deference only to the extent that they are compatible with our rules, and conflicts which compromise these rules are resolved with our rules remaining supreme.")

*Casement v. State,* 318 Ark. at 229–30, 884 S.W.2d at 595.

■ Regardless of whether the authority conferred by Act 1515 is in conflict with Rule 4.1, we cannot say in this instance that Act 1515 is superseded. The public policy of the State of Arkansas is declared by the General Assembly, not its courts. *Miller v. State,* 338 Ark. 445, 994 S.W.2d 476 (1999); *McDonald v. Pettus,* 337 Ark. 265, 988 S.W.2d 9 (1999); *Ross, Disbursing Agent v. Rich,* 210 Ark. 74, 194 S.W.2d 297 (1946); *Cole, Jones and Bean v. State,* 210 Ark. 433, 196 S.W.2d 582 (1946). Where the policy declared by the General Assembly may be effectuated without compromising the

primary purpose and effectiveness of the Rules of Criminal Procedure, we must do so. *See Casement v. State, supra; State v. Sypult,* 304 Ark. 5, 800 S.W.2d 402 (1990).

■ ■ The Fourth Amendment to the United States Constitution prohibits arrest without probable cause. "To implement the Fourth Amendment's protection against unfounded invasions of liberty and privacy, the [Supreme] Court has required that the existence of probable cause be decided by a neutral and detached magistrate whenever possible." *Gerstein v. Pugh,* 420 U.S. 103, 112 (1975). This determination does not necessarily have to be made prior to arrest unless the arrest is made in the home, in which case a warrantless arrest is prohibited by the Fourth Amendment absent probable cause and exigent circumstances. *County of Riverside v. McLaughlin,* 500 U.S. 44 (1991); *Norris v. State,* 338 Ark. 397, 993 S.W.2d 918 (1999) (citing *Payton v. New York,* 445 U.S. 573 (1980)). Although the Supreme Court has "expressed a preference for the use of arrest warrants when feasible, . . . it has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant" before arresting an individual in a public place. *Gerstein v. Pugh,* 420 U.S. at 113. It is left to the individual states to "integrate prompt probable cause determinations into their differing systems of pretrial procedures." *County of Riverside v. McLaughlin,* 500 U.S. at 53. There is no single preferred approach. *Id.*

■ The common law distinguished between felony and misdemeanors in the authority to make a warrantless arrest. 3 LaFave, *Search and Seizure* § 5.1 (1996). At common law, officers had the authority to arrest any individual without a warrant if the officer had reasonable grounds to believe the individual had committed a felony. *Id.* However, a warrantless arrest for a misdemeanor was authorized only if it occurred in the presence of the officer. *Id.* The General Assembly retained this distinction, albeit with one modification, when it codified the criminal law in Arkansas. *See* Ark. Code Ann. § 16-81-106(b)(2) (1987 & Supp. 1999). As codified, a law enforcement officer was authorized to arrest an individual without a warrant if the officer had reasonable grounds to believe the individual was guilty of a felony. *Id.* However, a warrant was necessary to arrest an individual for a misdemeanor unless it occurred in the officer's presence or the officer had probable cause to believe that the person had committed battery upon another person, for which there was evidence of bodily harm, and

the officer reasonably believed there existed a danger of violence if the suspect was not arrested without delay. *Id*.

In 1976, this court adopted the Arkansas Rules of Criminal Procedure. *In Re Arkansas Criminal Code Revision Comm'n*, 259 Ark. 863, 530 S.W.2d 672 (1975). Rule 4.1 of the newly adopted rules was largely a restatement of the existing statutory law concerning warrantless arrests. *See* Commentary to Ark. R. Crim. P. art. III.; Ark. Code Ann. § 16-81-106(b)(2) (1987 & Supp. 1999). Rule 4.1 followed the tradition of distinguishing between felonies and misdemeanors by authorizing warrantless arrests for misdemeanors only if they occurred in the officer's presence or consisted of a traffic offense involving death or injury to a person, damage to property, or driving of a vehicle while under the influence of any intoxicating liquor or drug. Ark. R. Crim. P. 4.1(a)(i)-(iii).[1]

Following the adoption of our Rules, the General Assembly again addressed the issue of warrantless arrests in the Domestic Abuse Act of 1991, wherein the General Assembly extended the authority to arrest without a warrant to incidents of domestic abuse that occurred within four hours of arrest. Ark. Code Ann. § 16-81-113 (Supp. 1999). We followed suit and adopted amended Rule 4.1 that included a new subsection authorizing warrantless arrests in cases where the officer has reasonable cause to believe the individual has committed the crime of domestic abuse within four hours of arrest. Ark. R. Crim. P. 4.1(a)(iv); *In re Ark. Rule 4.1 of A.R.Cr.P.*, 318 Ark. Appx. 893, 887 S.W.2d 514 (1994).[2]

---

[1] The traffic offense provision, which is restricted to specific circumstances involving bodily harm, property damage, or driving a vehicle while intoxicated, was recommended by the Arkansas Criminal Code Revision Commission in an amendment to its original petition for the promulgation of rules of criminal procedure. *In re Ark. Crim. Code Revision Comm'n*, 259 Ark. at 867, 530 S.W.2d at 675.

[2] Rule 4.1 was also amended in 1994 to add a new subsection (e) as follows:
A person arrested without a warrant shall not be held in custody unless a judicial officer determines, from affidavit, recorded testimony, or other information, that there is reasonable cause to believe that the person has committed an offense. Such reasonable cause determination shall be made promptly, but in no event longer than forty-eight (48) hours from the time of arrest, unless the prosecuting attorney demonstrates that a bona fide emergency or other extraordinary circumstance justifies a delay longer than forty-eight (48) hours. Such reasonable cause determination may be made at the first appearance of the arrested person pursuant to Rule 8.1.

The commentary to Rule 4.1 states that this new subsection codified the United States Supreme Court's rulings in *Gerstein v. Pugh, supra*, and *County of Riverside v. McLaughlin, supra*.

■ The General Assembly, in Act 1515 of 1999, has again acted to extend the authority of law enforcement officers to make an arrest without a warrant for a misdemeanor offense. It has declared the policy of the State of Arkansas to be that a probable cause determination by a neutral detached magistrate may be made following arrest, if a suspect is arrested within four hours of the alleged gas drive-off. Ark. Code Ann. § 16-81-114. Furthermore, the person arrested must be released within twenty-four hours of the arrest "unless a warrant for the arrest of the person is issued according to law." *Id.* The public policy expressed by the General Assembly in Act 1515 does not compromise the underlying purpose and effectiveness of Rule 4.1. As previously stated, this court has amended Rule 4.1 in the past to embody recent legislation. Nor does Act 1515 compromise established Fourth Amendment principles. The Supreme Court has never held that a warrantless arrest for a misdemeanor is prohibited by the Fourth Amendment. *See Maryland v. Macon*, 472 U.S. 463 (1985). It merely requires a prompt determination of probable cause. *County of Riverside v. McLaughlin, supra.* Absent a substantive declaration of law pursuant to the Fourth Amendment, it is a matter of public policy, upon which the General Assembly is free to speak, whether a determination of probable cause by a neutral and detached magistrate must be made before or after an arrest in a public place.

■ For these reasons, we hold that Act 1515 of 1999 is not superseded by Arkansas Rule of Criminal Procedure 4.1. We further hold that the trial court erred in finding that Act 1515 is an unconstitutional violation of the separation of powers.

■ Mr. Lester argues two alternative bases for upholding the trial court's order of suppression. First, he argues that his initial detention by the Russellville Police Department was in excess of fifteen minutes, and therefore in violation of Rule 3.1 of the Arkansas Rules of Criminal Procedure. Second, he argues that he was illegally arrested by the Clarksville Police Department outside the jurisdiction of Clarksville. These arguments, however, are premature as the trial court has not yet ruled on these issues. See *State v. Jones*, 338 Ark. 781, 3 S.W.3d 675 (1999). We are, there-

*In re Ark. R. Crim. P.*, 317 Ark. 649 (1994).

fore, unable to address the merits of these alternative arguments for suppression.

Reversed and remanded.