MERCURY MARKETING TECHNOLOGIES OF
DELAWARE, INC.; Gointernet.net, Inc.; Neal Saferstein;
Arthur Cohen; and Robert Rosenkranz  *v.*  STATE of Arkansas
ex rel. Mike Beebe, Attorney General

03-1328                                                 189 S.W.3d 414

Supreme Court of Arkansas
Opinion delivered July 1, 2004

*Wilson, Engstrom, Corum and Coulter,* by: *Gary D. Corum* and *Nate Coulter,* for appellant.

*Mike Beebe,* Att'y Gen., by: *J. Camille Williams,* Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellants, Mercury Marketing Technologies of Delaware, Inc., GoInternet.Net, Inc., Neal Saferstein, Arthur Cohen, and Robert Rosenkranz (jointly referred to as Mercury), appeal from the circuit court's injunction

restraining and enjoining it from conducting its telemarketing business in Arkansas.[1] Mercury asserts four points on appeal. We affirm the order of the circuit court.

On November 12, 2002, the appellee, the State of Arkansas, which was represented by the State Attorney General, filed a complaint alleging a cause of action against Mercury under the Arkansas Deceptive Trade Practices Act (ADTPA), which is codified at Ark. Code Ann. §§ 4-88-101 — 4-88-503 (Repl. 2001, Supp. 2003). The complaint asserted that Mercury conducted business throughout the nation, including Arkansas, in operating telemarketing strategies that "ostensibly offer services such as web site creation and maintenance." It then explained Mercury's method of conducting business:

21. The Mercury defendants market their services primarily to small businesses such as churches, not-for-profit organizations, medical offices, and law firms. They obtain lists of telephone numbers of these businesses and arrange for the trained telemarketers to call these businesses.

22. In 1998, the Mercury defendants began making telemarketing calls to Arkansas.

23. The Mercury defendants' telemarketer speaks with the individual that answers the telephone for the business, whether it is an employee or a small business owner (the call recipient).

24. During these calls, the Mercury defendants ostensibly offer to create web pages for businesses. Most call recipients that remember the call believed they were being offered a free sample web design and information but *never agreed to be billed*. Other call recipients do not recall ever being contacted.

25. Following the telemarketer's initial discussion with the call recipient, he or she is asked to hold for verification. During the verification procedure, the call recipient is asked to verify information such as name, address and phone number.

26. At no time during this process do the Mercury defendants clearly and conspicuously disclose to the call recipient basic and

---

[1] By order dated September 25, 2003, defendants Cohen and Rosenkranz were dismissed from the lawsuit.

material terms, such as price, method of billing, method of cancellation, intent to bill, or even ask for the call recipient's assent to the contractual arrangement.

27.   One method by which the Mercury defendants conceal these material terms is that after the information referred to above is confirmed, the telemarketer begins speaking in such a *rapid cadence* that he cannot be understood. Another method used is that the telemarketer simply omits some or all of the terms from the presentation.

28.   During this monologue, the call recipient is not clearly and conspicuously informed by the telemarketer that the business target will be billed $29.95 if it does not affirmatively cancel the service within 15 days.

29.   At no time is the call recipient asked to agree to have the business target billed.

. . . .

34.   The only written notice of the price of the service, the method of billing, or the.cancellation policy is printed in small print over half-way down the second page and on the back side of one page contained in the mail-out package.  There. below a fine-print, grey-screened list of over 1,000 dial-up access numbers (not one of which is an Arkansas telephone number), at the very bottom of the page, in italicized gray-screened fine print is the following notice:

> *Please refer above for the dial up access numbers for setting up your internet service.  If you have any questions about more dial up numbers, comments or if you decide to cancel your service please be advised to call our customer service number, 888-948-1930.  After fifteen days rates are 29.95 a month conveniently on your local telephone bill.  We are not associated with your local phone company.*

. . . .

36.   Fifteen days later, the Mercury defendants arrange for a third-party billing company to bill the business target $29.95 per month on its telephone bill. The charge is placed on the current charges, often listed as a billing from ILD services so it appears to be part of the normal service charges. That billing continues until

cancelled by the business target. The result of this notice and billing method is that often the business[ ] target does not realize it is being billed. [Emphasis in original and emphasis added.]

The State asserted that the acts and practices of Mercury "constitute violations" of the ADTPA and that absent injunctive relief, Mercury was likely to continue to injure consumers and harm Arkansas businesses. The State sought relief, including an injunction.

On the same day the State filed its complaint, it also filed a motion for a preliminary injunction. In that motion, the State claimed that it could meet its burden of proof for a preliminary injunction by showing that the appellants violated the ADTPA and that the act specifically authorized injunctive relief on a showing of violation of the act. The State further noted that, while not required, it could demonstrate that the "four elements tradition- ally considered and the factors identified in Rule 65 of the Arkansas Rules of Civil Procedure weigh in favor of granting the State's request[.]" The State attached affidavits to its motion from representatives of four businesses stating that they had been fraudulently billed by Mercury (College Avenue Church of Christ in El Dorado, Hoggard Law Firm in Little Rock, Stuttgart Regional Medical Center, and a physician at Stuttgart Regional Medical Center). The State also attached an affidavit from its investigator who had investigated ADTPA violations by Mercury by conducting a survey.

On December 9, 2002, Mercury filed a motion to dismiss due to a statutory exception. In that motion, Mercury asserted that because it was currently subject to an order being administered by the Federal Trade Commission (FTC) concerning practices iden- tical to those at issue in the current action, the ADTPA was not applicable under the terms of Ark. Code Ann. § 4-88-101 (Repl. 2001). Thus, according to Mercury, the matter should be dis- missed. The State responded that this matter should not be addressed under our case of *Villines v. Harris*, 340 Ark. 319, 11 S.W.3d 516 (2000). It further contended that the ADTPA did apply because Mercury was not in compliance with any order administered by the FTC, as evidenced by a letter from the FTC stating that it was investigating Mercury for engaging in practices in violation of the FTC order. The State also asserted that many of the violations which occurred in Arkansas took place prior to the entry of the FTC order dated February 27, 2000. For these reasons, the State maintained, Mercury's motion to dismiss should be denied.

A hearing was held on the motion on January 7, 2003, at which time the court heard testimony from Arkansas business owners who had been charged for Mercury's services on their phone bills without their knowledge. At that time, the circuit court denied Mercury's motion to dismiss and denied the State's motion for a preliminary injunction but found that there was probable cause for non-compliance with the FTC order. The court determined that there was reason to go forward with a trial on whether Mercury was in compliance with the FTC's order. At a subsequent hearing on July 14, 2003, the circuit court granted Mercury a continuance and again denied the State's oral renewal of its motion for a preliminary injunction.[2] The circuit court then set trial for November 10, 2003.

On August 26, 2003, Mercury's original counsel withdrew due to a conflict of interest. Following new counsel's request for a continuance, the court noted its inclination to grant the temporary restraining order and said:

> I'll tell you what my inclination is to do is my guess is that it's not going to be ready for trial since you're coming in late. My inclination is to grant the temporary restraining order. They had, we had a hearing almost a year ago, and there was substantial evidence in that case, I thought, but I also thought since we were going to have a fairly early resolution of this, at least I thought so last fall, that I denied the Motion for Restraining Order. My inclination at this point is to, is to grant that motion. So, the reason I wanted you guys from the Attorney General's office to stay, if you would file a Motion to Reconsider, I will, then if Mr. Coulter is hired, he can respond. If, if not, somebody can respond, and I'll set that for, for some determination.

At a hearing held on October 1, 2003, on the State's motion for reconsideration and Mercury's motion for continuance, the circuit court decided to grant the preliminary injunction. Prior to the parties' arguments on the issue, the circuit court made the following statement:

> Let me just, let me just tell you what I think, and then I'll let you guys talk. We had a hearing last year on this too, I guess to, to injunction, and we had a full, a full day deal, it may have been two

---

[2] The court, at the beginning of the hearing, noted that a jury trial in the matter was set in two weeks.

days, it seemed like it was about a week after I listened to it, . . . and my impression was . . . that truthfully, . . . listening to the spi[e]l that the telemarketers did . . . to the Arkansas consumers, and given the nature of the Federal lawsuit and having studied the, . . . Federal Judge['s Order], it seemed to me that, it violated that [Order]. My concern though, and the reason I didn't grant the injunction was that I think there is a real shaky legal precedent here. I'm not so sure that this case is . . . governed by Federal law. I mean I just don't know. I think there is an issue there that has to be decided, and so, instead of granting an injunction, I tried to get this thing to some early resolution to a trial, and that way, it would get to the Supreme Court, and we [could get it decided] one way or the other. In the meantime, this thing has turned into Halloween Thirteenth, and we've been wallowing in it for, and now we're going to wallow in it for another year, I suppose. And it concerns me that the type of marketing techniques that I saw in this preliminary hearing would be continued until we try it again. And that's . . . what bothers me, and I don't know if they're still doing [business here], if the SBC [ha]s cut them out of the business, and maybe that's something I shouldn't be concerned about. If I were to grant a preliminary temporary injunction, is that an appealable Order?

Following the parties' arguments, the court granted the State's motion:

Well, . . . I think I am going to grant injunctive relief. I just think that there's, but let me also say that we need to get this thing set for trial. I think it's in a position that I don't think they can try it in November. . . . [J]ust from what I've seen before, . . . but . . . I'm going to grant the temporary injunction at least until the trial date, [and] let you guys go in there with Melissa and figure out when you can try it this spring. And I'll be a year older, and we'll all be a little smarter, and get this thing going. But, I'm going to grant your injunction. I think for one thing since, I don't think they're doing business here right now anyway, but I think that there's a chance for harm if they continue the way they're going, and it's hard to stop this type of conduct from hurting a lot of people if in fact that's what . . . [is going on.] [I]s this going to be a trial by jury?

On October 21, 2003, the circuit court entered an order granting Mercury's motion for a continuance and the State's motion for a preliminary injunction based on the evidence and arguments presented. The order set the trial date for April 5, 2004, and restrained and enjoined Mercury "from conducting any business in the state of Arkansas."

. . . Specifically, Defendants shall not (1) initiate any telemarketing calls to Arkansas consumers; (2) bill any Arkansas consumers for any previous sales of services or products of any kind; or (3) collect any charges from any Arkansas customer for any sales of services or products.

An amended order was entered by the circuit court on November 6, 2003.

### I. ADTPA Exception

Mercury first argues that the ADTPA is inapplicable under § 4-88-101 of the Act, because the practices at issue are subject to and comply with an order administered by the FTC. It asserts this on grounds that the Federal Trade Commission had already investigated Mercury's identical telemarketing practices in Pennsylvania and had filed suit against one of the Mercury appellants in federal court, obtained a federal court order governing these identical practices, and was administering that order at the time the State initiated the action. It maintains that the circuit court violated the statute by accepting the State's claims and by issuing the preliminary injunction.

The question presented by Mercury appears to be this: does the circuit court have jurisdiction to issue a preliminary injunction pursuant to the ADTPA, and specifically under Ark. Code Ann. § 4-88-104(1) (Repl. 2001), where the party being enjoined is currently subject to an order administered by the FTC involving similar, if not the same, practices as contemplated under § 4-88-101. We turn to the language of § 4-88-101, which governs the applicability of the ADTPA:

This chapter does not apply to:

(1) Advertising or practices which are subject to and which comply with any rule, order, or statute administered by the Federal Trade Commission[.]

Ark. Code Ann. § 4-88-101(1) (Repl. 2001).

■ This court has previously observed that questions of jurisdiction are not independently appealable in an interlocutory appeal from a preliminary injunction. *See Villines v. Harris, supra.* In *Villines,* the court had a "distinct basis and specific authority to hear

the appeal from an injunction[.]'' 340 Ark. at 324, 11 S.W.3d at 519. While the parties urged this court to examine whether the circuit court erred in finding it had subject-matter jurisdiction over the matter at issue, this court said: ''[w]hen an appeal reaches a court via an order granting a preliminary injunction, the appellate court will not delve into the merits of the case further than is necessary to determine whether the trial court exceeded its discretion in granting the injunction.'' *Id.* at 323, 11 S.W.3d at 519. This court concluded that where there is a distinct basis and specific authority to hear the appeal from an injunction, ''the extent of our review is dependent on the decision appealed from.'' *Id.* at 324, 11 S.W.3d at 519. We specifically declined to review a number of issues, unrelated to the preliminary injunction, including whether the circuit court erred in finding that it had subject-matter jurisdiction over the action, because this went beyond the scope of the interlocutory appeal dealing with that injunction.

The situation in *Villines* appears analogous to the situation here, where the statutory exception argued by Mercury concerns the circuit court's authority to enjoin Mercury under the ADTPA. In this regard, we are not persuaded by Mercury's contention that because the statutory exception is inextricably linked to this appeal, we should address it. Furthermore, we fail to see how Mercury is in compliance with an order administered by the FTC, which § 4-88-101 requires for the exception to take effect. We hold that the exception does not prevent the instant appeal.

## II. Applicable Legal Standard

Mercury argues that the State was erroneous in its contention that it need only show some credible evidence that reasonable cause existed to believe that Mercury had violated, or was likely to violate, the ADTPA in order to receive a preliminary or temporary injunction. It contends that this court has never held that the General Assembly could authorize the grant of preliminary injunctive relief in the absence of two essential requirements: likelihood of success on the merits and irreparable harm. It maintains that the court's issuance of a preliminary injunction is, at best, premised upon a ''suspicion that the tone and cadence of the 'spiel' of the telemarketers — which the trial court characterized as 'quick gibberish from someone in New Jersey' — might not be fully understood by some Arkansans.'' It asserts that nowhere in the

record is there any statement by the circuit court of a finding of irreparable harm, much less any evidentiary basis for such a finding; nor is there any express finding of likelihood of success on the merits.

Injunctive relief under the ADTPA is governed by Ark. Code Ann. § 4-88-104 (Repl. 2001), which provides:

> In addition to the criminal penalty imposed hereunder, the Attorney General of this state shall have authority, acting through the Consumer Counsel, to file an action in the court designated in § 4-88-112 for civil enforcement of the provisions of this chapter, including, but not limited to, the seeking of restitution and the seeking of an injunction prohibiting any person from engaging in any deceptive or unlawful practice prohibited by this chapter.

Ark. Code Ann. § 4-88-104 (Repl. 2001). Mercury, however, relies on Arkansas Rule of Civil Procedure 65 and our common law for the proposition that when issuing a preliminary injunction or temporary restraining order, the trial court must find: (1) irreparable harm will result in the absence of an injunction or restraining order, and (2) the moving party has demonstrated a likelihood of success on the merits. *See AJ&K Operating Co., Inc. v. Smith*, 355 Ark. 510, 140 S.W.3d 475 (2004).

■ As an initial matter, we agree with the Attorney General that when he has a specific statutory mandate to protect the public interest, traditional common-law prerequisites for an injunction in civil litigation, such as irreparable harm and likelihood of success on the merits, are not applicable. *See Commonwealth v. Mass. CRINC*, 392 Mass. 79, 466 N.E.2d 792 (1984); *People ex rel. Hartigan v. Dynasty Sys. Corp.*, 128 Ill. App. 3d 874, 471 N.E.2d 236 (1984).

The State discusses two state appellate decisions from foreign jurisdictions in support of its proposition that the Rule 65 requirements do not apply to the State's request for a preliminary injunction under § 4-88-104. The most recent decision is *State ex rel. McGraw v. Imperial Marketing*, 196 W. Va. 346, 472 S.E.2d 792 (1996). In that case, the West Virginia Supreme Court of Appeals examined the grant of a preliminary injunction which restricted the method and manner in which the appellee could solicit West Virginia consumers in the sale of jewelry and other products. The court observed that the method of analysis for an injunction issued

under W. Va. Code § 46A-7-110 (1974) of the West Virginia Consumer Credit and Protection Act is more narrow than the typical motion for a preliminary injunction. The applicable West Virginia statute provided as follows:

> With respect to an action brought to enjoin violations of this chapter or unconscionable agreements or fraudulent or unconscionable conduct, the attorney general may apply to the court for appropriate temporary relief against a respondent, pending final determination of the proceedings. If the court finds after a hearing held upon notice to the respondent that there is reasonable cause to believe that the respondent is engaging in or is likely to engage in conduct sought to be restrained, it may grant any temporary relief or restraining order it deems appropriate.

W. Va. Code § 46A-7-110 (1974).

The West Virginia court then went on to analyze whether the issuance of the preliminary injunction was appropriate under that statute:

> The method of analysis which governs the propriety and scope of an injunction under W. Va. Code 46A-7-110 (1974) deviates from the customary standard for the issuance of temporary relief and may best be described as whether the Attorney General has shown by the existence of some credible evidence, even if disputed, that reasonable cause exists to believe that the respondent is engaging in or is likely to engage in conduct sought to be restrained. In other words, the Attorney General need not prove the respondent has in fact violated the Act, but only needs to make a minimal evidentiary showing of good reason to believe that the essential elements of a violation of the Act are in view.

196 W. Va. at 352, 472 S.E.2d at 798. In a footnote, the West Virginia court stated that the customary standard for the issuance of a preliminary injunction consists of requirements similar to Arkansas': reasonable likelihood of success on the merits, the presence of irreparable harm, the absence of any other appropriate remedy, and the necessity of a balancing-of-hardship test.

The second case cited by the State is *People ex rel. Hartigan v. Dynasty Sys. Corp.*, *supra*. There, the Appellate Court of Illinois, Fourth Division, examined an interlocutory appeal from the denial of a motion to vacate a temporary restraining order and to vacate

a preliminary injunction enjoining the appellees from marketing their products and services, which consisted of a multi-level sales program.

The Illinois statute governing the issuance of the injunction provided:

> Whenever the Attorney General has reason to believe that any person is using, has used, or is about to use any method, act or practice declared by Sections 2 through 20 of this Act to be unlawful, and that proceedings would be in the public interest, he or she may bring an action . . . to restrain by preliminary or permanent injunction the use of such method, act or practice. Ill. Rev. Stat. 1983, ch. 121 1/2 , par. 267.

128 Ill. App. 3d at 885, 471 N.E.2d at 243 (emphasis added). One of the issues before the court was whether the Illinois Attorney General, in seeking a preliminary injunction, was required to prove the traditional common-law requirements for an injunction. The Illinois court reiterated a prior holding that "when an injunction is authorized by statute, the traditional common-law grounds for relief need not be established and that the requirements of the statute are controlling." *Id.*, 471 N.E.2d at 243. The court then concluded that the Attorney General, in seeking an injunction pursuant to Illinois's Consumer Fraud and Deceptive Business Practices Act, need only "show a violation of the statute." *Id.*, 471 N.E.2d at 244.

Our statute § 4-88-104, differs from the two foreign statutes relied on by the State in that it provides that the State Attorney General may seek an injunction "prohibiting any person from engaging in a deceptive or unlawful practice prohibited by this chapter." Thus, as is the case in Illinois, a violation of the Act, according to the state Attorney General, is what triggers the prayer for an injunction.

The question then arises as to what governs the issuance of an injunction under § 4-88-104. In West Virginia, the 1974 statute authorized the Attorney General to file suit and provided that a temporary restraining order would issue upon a finding by the court of "reasonable cause to believe" the respondent is engaging in forbidden conduct. In Illinois, the statute provided that if the Attorney General "has reason to believe" that an unlawful practice contrary to the public interest is being perpetuated, he or she may seek a preliminary or permanent injunction. The Illinois statute offers no guidance on what standard the court should employ in issuing the injunction.

■ In the case before us, the Arkansas Attorney General clearly had reason to believe that a violation of the ADTPA was afoot, which he detailed in his complaint and in his motion for preliminary injunction. At the January 7, 2003 hearing, the Attorney General presented testimony from several Arkansas small-business owners who had been charged by Mercury for its services, including Dennis Haugen, owner of H & H Pawn; Dale Knoll, office manager for the Purple Cow Restaurants; Denise Hoggard, an attorney; and Joe Stewart, owner of Dixon Manor Mobile Home Park. None of the owners' employees had been authorized to accept service from Mercury, according to the owners. Some of the owners testified that they had never received any information from Mercury in the mail. And some testified that they would have no use for the services offered by Mercury in that they already had internet services, or they did not require internet service or a website. Each owner testified that only after reviewing a phone bill or upon receiving a survey from the Attorney General did he or she discover that the business was being billed for Mercury's services. During cross-examination, Mercury played for some of the owners and the circuit court the tape recordings of the telemarketing phone calls that transpired between the owners' employees and Mercury. The circuit court later described these phone calls as sounding like the Chipmunks from The Chipmunk Show, a spiel, and "quick gibberish."

We conclude that the circuit court clearly believed that a violation of the ADTPA was occurring. At the circuit court's July 14, 2003 hearing, the court said it had previously felt "there was a pretty strong case for an injunction[.]" On August 26, 2003, the circuit court stated that his inclination was to grant the temporary restraining order because there had been a hearing on the matter a year previously and there was "substantial evidence in that case[.]"[3]

■ The circuit court found evidence of a violation, and we hold that the court's finding in this regard was not clearly erroneous. See Ark. R. Civ. P. 52(a); *Thompson v. Bank of America*, 356 Ark. 576, 157 S.W.3d 174 (2004). Moreover, the circuit court

---

[3] We question whether Mercury has argued on appeal that there was not sufficient evidence that the ADTPA had been violated. Rather, its arguments are couched in terms of no substantial evidence of irreparable harm or likelihood of success on the merits.

admitted to the parties that one reason it did not issue a preliminary injunction earlier was that it believed a full trial on the merits was imminent. When this proved not to be the case, the court issued the preliminary injunction. This appears to us to be a reasonable explanation for the court's decision premised upon the public's interest.

At one point, the circuit court questioned whether Mercury was doing business in the state. The court went on to say that it was issuing the preliminary injunction because of the chance of harm to the public if Mercury is doing business in Arkansas. This seems entirely reasonable. If at trial on whether to issue a permanent injunction it is determined that Mercury has ceased doing business in Arkansas, the matter will be moot. Until then, the preliminary injunction should stand.

Again, we hold that the circuit court's finding that the ADTPA was violated is not clearly erroneous. *See* Ark. R. Civ. P. 52(a).

### III. Judicial Comity

For its final point, Mercury urges that it is a violation of judicial comity for an Arkansas court to issue a preliminary injunction when a federal district court order in Pennsylvania is in effect and being administered by the FTC. Mercury cites our case of *Three Sisters Petroleum, Inc. v. Langley*, 348 Ark. 167, 72 S.W.3d 95 (2002), in support of its argument. The State disagrees and argues that Mercury's reliance on *Three Sisters* is misplaced.

The State is correct. This court's analysis in *Three Sisters Petroleum, Inc. v Langley, supra*, is inapplicable to the instant case. In that case, this court reviewed a temporary restraining order by an Arkansas circuit court enjoining the appellants from proceeding further in a similar suit in Louisiana state court. After rejecting the circuit court's bases for irreparable harm and likelihood of success on the merits, this court noted that the restraining order at issue ignored the "common principles of comity between courts of sister states." 348 Ark. at 178, 72 S.W.3d at 103. We said:

> . . . " 'Judicial comity' is the principle in accordance with which the courts of one state or jurisdiction give effect to the laws and judicial decisions of another, not as a matter of obligation but out of deference and respect." 16 AM. JUR. 2D *Conflict of Laws* § 16 (1998) (footnote omitted). The principle of comity requires that courts

exercise the power to enjoin foreign suits sparingly. *See* 42 AM. JUR. 2D *Injunctions* § 195 (2000). This is particularly true where suit has already been brought in the foreign court. Generally, "[a] court of one state will not enjoin the prosecution of an action in a second state when the court of the second state was the first to acquire jurisdiction of the parties and the right to adjudicate the controversy, in the absence of some peculiarly equitable ground for granting such relief." 42 AM. JUR. 2D *Injunctions* § 206 (2000) (footnote omitted). This general principle was recognized in *Pickett v. Ferguson*, 45 Ark. 177, 189 (1885), wherein this court held that restraining a party from proceeding in the courts of another state "is a matter of very great delicacy, almost inevitably leading to the distressing conflicts of jurisdiction." This court concluded that such restraint should only be imposed "where the foreign suit appears to be ill calculated to answer the ends of justice," such as where the court lacks jurisdiction over all of the parties or the subject matter of the case. *Id.* (citations omitted).

. . . .

Here, unlike the facts in *Pickett*, the Louisiana state court has jurisdiction over all of the parties. In fact, the issue of jurisdiction has been repeatedly litigated, with the Louisiana state court and both the Arkansas and Louisiana federal courts ruling that jurisdiction belonged in Louisiana state court, due to the fact that Louisiana residents were on both sides of the suit. Although Appellees have appealed the most recent jurisdiction ruling by the Louisiana state court, it is not apparent that they will succeed on that issue. Moreover, the holding in *Cook* clearly demonstrates this court's historic reluctance to support an injunction restraining a resident of a sister state from proceeding with a suit already instituted in that state. In short, the circuit court's authority to issue injunctions of foreign suits should only be exercised in the rarest of circumstances. This is not such a rare circumstance.

*Id.* at 178–180, 72 S.W.3d at 103–04.

In the case at hand, the parties are not the same in both the Pennsylvania federal district court case and the Arkansas case. Namely, the State was not a party in the federal case, and the FTC is not a party here. Moreover, while the actions of Mercury might be the same in each case, those actions could certainly violate both

state and federal statutes. In addition, the State in the instant case does not seek to enjoin the FTC's prosecution or the federal action being taken in Pennsylvania. The circumstances resulting in judicial comity which were at issue in *Three Sisters* are not analogous to the situation at issue here. We conclude that Arkansas has the right to seek restitution on behalf of its citizens. There was no violation of judicial comity.

Affirmed.

CORBIN, IMBER, and HANNAH, JJ., dissent.

JIM HANNAH, Justice, dissenting. I respectfully dissent. I disagree with the majority's conclusion that the Rule 65 requirements do not apply to the State's request for a preliminary injunction under § 4-88-104. I believe this case should be reversed and remanded to the circuit court for application of Rule 65 to the State's request for preliminary injunction.

In determining whether to issue a preliminary injunction or temporary restraining order pursuant to Rule 65, the circuit court must consider two things: (1) whether irreparable harm will result in the absence of an injunction or a restraining order, and (2) whether the moving party has demonstrated a likelihood of success on the merits. *Three Sisters Petroleum, Inc. v. Langley*, 348 Ark. 167, 72 S.W.3d 95 (2002). Recently, in *AJ& K Operating Co. v. Smith*, 355 Ark. 510, 140 S.W.3d 475 (2004), this court took the opportunity to clarify that the standard of review for a temporary restraining order or preliminary injunction is whether the circuit court abused its discretion. We stated: "The standard of review is the same for the two essential components of a TRO or preliminary injunction: irreparable harm, and likelihood of success on the merits. *See* David Newbern & John J. Watkins, *Civil Procedure* § 29-2, at 437 (3d ed. 2002)."

The majority holds that in cases where the Attorney General "has a specific statutory mandate to protect public interest, traditional common-law prerequisites for an injunction in civil litigation, such as irreparable harm and likelihood of success on the merits, are not applicable." I disagree. Our rules of civil procedure govern the procedure in the circuit courts in all suits or actions of a civil nature with the exceptions stated in Rule 81. *See* Ark. R. Civ. P. 1. Rule 81 provides, in relevant part:

> (a) *Applicability in General.* These *rules shall apply* to all civil proceedings cognizable in the circuit courts of this state *except in those*

*instances where a statute which creates a right, remedy or proceeding specifically provides a different procedure* in which event the procedure so specified shall apply.

(c) *Procedure Not Specifically Prescribed.* When no procedure is specifically prescribed by these rules, *the court shall proceed in any lawful manner not inconsistent with* the Constitution of this State, *these rules* or any applicable statute.

Ark. R. Civ. P. 81(a), (c) (emphasis added).

In the present case, § 4-88-104 (Repl. 2001) provides a remedy for civil enforcement of the ADTPA; however, § 4-88-104 does not specifically provide a different procedure for seeking injunctive relief. As such, the exception in Rule 81(a) does not apply.[1] Further, the Rule 81(c) exception does not provide a basis for deviating from our rules of civil procedure. Where, as here, a procedure is not specifically prescribed by these rules, the court shall proceed in any lawful manner not inconsistent with the Arkansas Constitution, our rules of civil procedure, or any applicable statute. By creating a new procedure for seeking injunctive relief, the majority authorizes a proceeding which is inconsistent with a rule of civil procedure. Specifically, this judicially-created procedure is inconsistent with Rule 65, which requires the circuit court to consider: (1) whether irreparable harm will result in the absence of an injunction or restraining order, and (2) whether the moving party has demonstrated a likelihood of success on the merits. This new procedure is also inconsistent with this court's

---

[1] *See Weiss v. Johnson*, 331 Ark. 409, 961 S.W.2d 28 (1998). In that case, the appellee's driver's license was suspended by the Office of Driver Services of the Revenue Division of the Department of Finance and Administration pending the adjudication of her DWI charge. Pursuant to Ark. Code Ann. § 5-65-104 (Repl. 1997), the appellee filed a "de novo petition for review" of the agency determination in circuit court. DF & A failed to appear at the hearing, and the trial court entered a judgment in favor of the appellee. DF & A moved to set aside the judgment, arguing that it was not served with the appellee's petition in compliance with Ark. R. Civ. P. 4. The trial court denied the motion, finding that the hearing was a "special hearing" and that the rule was not applicable. DF& A appealed, arguing that the trial court abused its discretion in denying its motion to set aside because service of the petition for review failed to comply with Ark. R. Civ. P. 4. We reversed and dismissed, stating: "Given the silence of Ark. Code Ann. § 5-65-104(c) on the subject of notice or service of process, and therefore the lack of a 'different procedure' which conflicts with the Rules, we are left with no choice but to conclude that the Rules govern because Rule 81(a) does not apply." *Johnson*, 331 Ark. at 416, 961 S.W.2d at 31.

well-settled rule that the standard of review for a temporary restraining order or preliminary injunction is whether the circuit court abused its discretion.

Moreover, it is unclear exactly what this new procedure entails. The majority states that "[t]he circuit court has already found substantial evidence to support a violation of the FTC order which would constitute a violation of the ADTPA." Shortly thereafter, the majority states that "[t]he circuit court found evidence of a violation, and we hold that the court's finding in this regard is not clearly erroneous." How much evidence warrants the issuance of an injunction?

Had the General Assembly intended to institute a new procedure for seeking injunctive relief under § 4-88-104, or to deviate from the rules of civil procedure, it could have done so. In *State v. Lester*, 343 Ark. 662, 38 S.W.3d 313 (2001), this court stated:

> The Arkansas Constitution confers upon the courts the inherent authority to promulgate rules of procedure. *Miller v. State*, 262 Ark. 223, 555 S.W.2d 563 (1977). However, Article 7, sections 1 and 4,[2] "do not expressly or by implication confer on this Court exclusive authority to set rules of court Procedure." *Jackson v. Ozment*, 283 Ark. 100, 101, 671 S.W.2d 736, 738 (1984) *overruled on other grounds by Weidrick v. Arnold*, 310 Ark. 138, 835 S.W.2d 843 (1992). The court shares this authority with the General Assembly. *St. Clair v. State*, 301 Ark. 223, 783 S.W.2d 835 (1990); *Curtis v. State*, 301 Ark. 208, 783 S.W.2d 47 (1990). Thus, it is not a violation of separation-of-powers principles for the legislature to enact statutes pertaining to rules of procedure, *St. Clair v. State, supra,* although such statutes may be superseded by the rules promulgated by the judiciary. *See Casement v. State*, 318 Ark. 225, 884 S.W.2d 593 (1994); *Weidrick v. Arnold, supra.*

*Lester*, 343 Ark. at 668, 38 S.W.3d at 316.

Clearly, the General Assembly is aware of its authority to enact statutes pertaining to rules of procedure. For example, the General Assembly enacted § 5-37-407, which covers forgery and

---

[2] Article 7, sections 1 and 4 were repealed by Amendment 80, § 3, which provides: "The Supreme Court shall prescribe these rules of pleading, practice and procedure for all courts; provided these rules shall not abridge, enlarge or modify any substantive right and shall preserve the right of trial by jury as declared in this Constitution."

fraudulent practices in cable television. This statute makes clear that the General Assembly, in providing for injunctive relief, intended to deviate from the rules of civil procedure. In a civil action under that subchapter, "[t]he court may [a]ward declaratory relief and other equitable remedies, including preliminary and final injunctions to prevent or restrain violations of this subchapter, *without requiring proof that the plaintiff has suffered or will suffer actual damages or irreparable harm or lacks an adequate remedy at law.*" Ark. Code Ann. § 5-37-407(b)(1) (Supp. 2003) (emphasis added).

No procedure for seeking injunctive relief is provided in § 4-88-104. Without evidence of a drafting omission, this court will not read into legislation what is not there. *Cave City Nursing Home, Inc. v. Arkansas Dep't of Human Servs.*, 351 Ark. 13, 89 S.W.3d 884 (2002). In this case, there is no evidence of a drafting omission, nor is there any evidence that the General Assembly intended to provide different rules of procedure. Again, I believe Rule 65 applies.

Further, I believe that the circuit court abused its discretion in granting the State's motion for preliminary injunction. In *Three Sisters, supra,* we stated:

> Regarding the first necessary showing, this court has held: "Essential to the issuance of a temporary restraining order is a finding that a failure to issue it will result in irreparable harm to the applicant." *Kreutzer,* 271 Ark. at 244, 607 S.W.2d 670, 671 (citing Ark. R. Civ. P. 65). "The prospect of irreparable harm or lack of an otherwise adequate remedy is the foundation of the power to issue injunctive relief." *Wilson v. Pulaski Ass'n of Classroom Teachers*, 330 Ark. 298, 302, 954 S.W.2d 221, 224 (1997).
>
> Regarding the second thing that must be shown, this court has held: "Of course, in order to justify a grant of preliminary injunction relief, a plaintiff must establish that it will likely prevail on the merits at trial." *W.E. Long Co. v. Holsum Baking Co.*, 307 Ark. 345, 351, 820 S.W.2d 440, 443 (1991) (citing *Smith v. American Trucking Ass'n,* 300 Ark. 594, 781 S.W.2d 3 (1989)). The test for determining the likelihood of success is whether there is a reasonable probability of success in the litigation. *Customs Microsystems,* 344 Ark. 536, 42 S.W.3d 453. Such a showing "is a benchmark for issuing a preliminary injunction." *Id.* at 542, 42 S.W.3d at 457-58.

*Three Sisters,* 348 Ark. at 175, 72 S.W.3d at 101.

In this case, the order of preliminary injunction itself contains no finding of irreparable harm. At the hearing on the State's motion for reconsideration, the circuit court stated that it believed there was a *"chance* for harm if they continue the way they're going, and it's hard to stop this type of conduct from hurting a lot of people *if* in fact that's what . . . [is going on]." (Emphasis added.)

Generally, harm is only considered irreparable when it cannot be adequately compensated by money damages or redressed in a court of law. *See Three Sisters*, 348 Ark. at 176, 72 S.W.3d at 101 (citing *Kreutzer v. Clark*, 271 Ark. 243, 607 S.W.2d 670 (1980)). Mercury argues that since the State seeks "credit" or "restitution" to consumers for amounts it contended Mercury had improperly billed to its customers, it is clear that the "harm" is not irreparable because it can be adequately compensated by money damages. The State contends that an injunction authorized by the ADTPA results in a different analysis of the irreparable harm prong of the preliminary–injunction analysis. I believe the State is correct. The ADTPA protects consumers and the business community from unconscionable, false, and deceptive trade practices. *See State v. R&A Inv. Co.*, 336 Ark. 289, 985 S.W.2d 299 (1999). The enactment of the ADTPA is a determination by the General Assembly that violations of the Act will cause irreparable harm.

Even assuming that the circuit court's statement concerning a "chance of harm" is considered a finding of irreparable harm, the record is devoid of a finding of a likelihood of success on the merits. As stated previously, in determining whether to issue a preliminary injunction pursuant to Rule 65, the circuit court must consider: (1) whether irreparable harm will result in the absence of the injunction, and (2) whether the moving party has demonstrated a likelihood of success on the merits. The appropriate standard was not applied in this case.

For the foregoing reasons, I believe that this case should be reversed and remanded for the circuit court to apply the appropriate standard.

CORBIN and IMBER, JJ., join.